744 P.2d 133

**STATE of Idaho, Plaintiff-Respondent,**

v.

**Andrew HAM, Defendant-Appellant.**

**No. 16662.**

Court of Appeals of Idaho.

Oct. 2, 1987.

Ada County Public Defender by Neal S. Stivers, Deputy, Boise, for defendant-appellant.

Jim Jones, Atty. Gen., Myrna A.I. Stahman, Deputy Atty. Gen., Boise, for plaintiff-respondent.

WALTERS, Chief Judge.

In this appeal, we are asked to determine whether the district court erred in refusing to suppress evidence that had been seized by the police during a warrantless search. The search occurred in the bedroom of the appellant, Andrew Ham, which was located in an apartment rented and occupied by Andrew's mother. The search was conducted with his mother's consent, while Andrew was not present. Following his arrest on a charge of grand theft, Andrew moved to suppress the seized evidence. The district court held the search was valid, based upon the mother's consent. We affirm the order denying the suppression motion.

The circumstances surrounding the search, and the denial of the suppression motion, are detailed as follows.[1] Andrew Ham, age nineteen, shared a bedroom with his minor brother in a two-bedroom apartment rented by his mother. Andrew had entered into an informal agreement in February, 1986, with his mother to pay "rent" to her for his bedroom. Apparently this arrangement was on a month-by-month basis. He paid for the month of March only. On April 7, 1986, Mrs. Ham informed Andrew that because he had failed to pay the April rent due her, he would have to "move out by Friday," April 9. In the meantime, on April 8, 1986, Andrew became the focus of a burglary investigation by the police. At the Hams' apartment, while Andrew

---

1. The facts of the search and seizure were presented to the district court through a transcript of a preliminary hearing held in the magistrate division. The purpose of that hearing was to determine if there was probable cause to hold the defendant to answer a charge of grand theft in district court. Other than that transcript, no evidence was presented by testimony from any witnesses in the suppression proceeding before the district judge. Our opinion, therefore, reflects the factual scenario we have drawn from the preliminary hearing transcript.

was absent, the officers asked Mrs. Ham if they could search Andrew's bedroom. The officers did not have a warrant for the search. Mrs. Ham consented to the search and evidence of the burglary was found in a closet in the bedroom used by Andrew and his minor brother. Andrew was thereafter arrested for grand theft by possession of stolen property.

Following his arraignment in district court, Andrew moved to suppress the evidence obtained in the search. He contended that his mother lacked authority to consent to the search of his bedroom. Andrew asserted that he had been paying rent for his bedroom and the bedroom was under his exclusive control. Although he admitted being in arrears on the rent, Andrew maintained that he was a holdover tenant. When the district court denied Andrew's motion to suppress, Andrew entered a conditional plea of guilty, reserving the right to seek appellate review of the court's ruling on the suppression motion. This appeal followed.

We begin with the proposition that a search conducted without a warrant issued upon probable cause is per se unreasonable under the Fourth Amendment as well as the Idaho Const. art. I, § 17. This rule, however is subject "to a few specifically established and well-delineated exceptions." *Katz v. United States*, 389 U.S. 347, 357, 88 S.Ct. 507, 514, 19 L.Ed.2d 576 (1967). One of the exceptions is a search conducted with consent voluntarily given by a person having authority to consent to the search. *Schneckloth v. Bustamonte*, 412 U.S. 218, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973). In the instant case, the authority of a third party (such as Mrs. Ham) to consent to a warrantless search may be based on one of two grounds, depending upon the particular circumstances shown by the evidence. First, that consent may be predicated upon the third party's superior "power, authority, ownership and possession" of the premises, *State v. Hagan*, 47 Idaho 315, 320, 274 P. 628, 629 (1929), also characterized as "such dominion and control ... as ordinarily obtains with regard to one's dwelling and the possession adjacent thereto." *State v. Haggard*, 89 Idaho 217, 225, 404 P.2d 580, 584 (1965). Alternatively, the consent may be obtained from a third party who shares control of the premises or the items to be searched. *State v. Huskey*, 106 Idaho 91, 675 P.2d 351 (Ct.App.1984), *citing United States v. Matlock*, 415 U.S. 164, 94 S.Ct. 988, 39 L.Ed.2d 242 (1974), *and Frazier v. Cupp*, 394 U.S. 731, 89 S.Ct. 1420, 22 L.Ed.2d 684 (1969).

Andrew relies on *State v. Carsey*, 295 Or. 32, 664 P.2d 1085 (1983), to show that he had exclusive control over his bedroom and a reasonable expectation of privacy therein, so that Mrs. Ham had no authority to consent to the search. In *Carsey* the living arrangement between the defendant and his grandparents, from whom he rented a bedroom, was described by the trial court as follows:

> The Defendant occupied a bedroom in his grandparents' home for which he paid $60 per month as rent. He did his own cleaning and washing. His grandfather never went into his room. His grandmother never went into his room except to stick her head in and tell him that a meal was ready. She characterized the arrangement as a unspoken agreement that his room was under his exclusive control.

*Id.* 664 P.2d at 1089.

The instant case is clearly distinguishable from *Carsey*. Here, Mrs. Ham testified that she had free access to Andrew's bedroom "to pick up dirty dishes and laundry." She indicated she did this "about once every two days, at least." Mrs. Ham gave permission to Andrew to lock the bedroom door while he was at home and she would knock prior to entering, but she refused to let Andrew or his brother lock the bedroom door when either of the boys were not present in the room. She testified that when the boys were home they would lock the bedroom door "quite often." She related her "understanding" about the boys' use of the room:

> A. Both of the boys, I—you know, they needed their privacy so I said, "That's your room then."

Q. I see. So they pretty much had exclusive control over this room?

A. Over the room, yes.....

Q. Alright.

A. ..... because I have no control over them.

In respect to her access to the room for picking up laundry, Mrs. Ham testified:

Q. Now did you ever—Andrew and you ever discuss you picking up his laundry? What was your understanding about that?

A. Not really, The only time was, he said not to pick up anything that was laying on his bed and most of it was on the floor.

Q. Did he ever give you any other.....

A. Huh-uh.

Q. ..... directives like that?

A. No.

Although Andrew claims to have had exclusive possession of his room it is clear from his actions and those of his mother that his control was subservient and subject to the power, authority, ownership and possession of his mother over the premises.[2] At the very least, and as found by the trial court in this case, Mrs. Ham shared common control with Andrew over his bedroom, sufficient to support the validity of her consent to the search. In *United States v. Matlock*, 415 U.S. 164, 171, n. 7, 94 S.Ct. 988, 993, n. 7, 39 L.Ed.2d 242 (1974), the Court stated:

> The [common] authority which justifies the third-party consent ... rests ... [up]on *mutual use* of the property by persons generally having joint access or control for most purposes, so that it is

reasonable to recognize that any of the co-inhabitants has the right to permit the inspection in his own right and that the others have assumed the risk that one of their number might permit the common area to be searched. [Emphasis added.]

We hold that Mrs. Ham possessed sufficient use, control and authority over the premises, including the closet in the bedroom occupied by Andrew Ham, to give valid consent to a warrantless search. The order denying the motion to suppress is affirmed.

SWANSTROM, J., concurs.

BURNETT, Judge, specially concurring.

I agree that the warrantless search in this case was supported by a valid consent. However, I write separately to express different reasons for reaching this conclusion.

As our Court often has noted, the threshold issue in a Fourth Amendment case is whether an individual's reasonable expectation of privacy has been infringed. This issue is governed by a twofold test:

> The initial inquiry is whether the individual entertained a genuine expectation of privacy where the search occurred. The second question is whether the accused's subjective expectation of privacy is one which society is willing to recognize as objectively reasonable.

*State v. Holman*, 109 Idaho 382, 385, 707 P.2d 493, 496 (Ct.App.1985), *quoting Katz v. United States*, 389 U.S. 347, 361, 88 S.Ct. 507, 516, 19 L.Ed.2d 576 (1967). In

---

**2.** Regarding Andrew's claim of being a holdover tenant, the record shows Andrew made but one "rent" payment to his mother for his occupancy of her home. We believe such a minimal contribution is insufficient to negate the other factors showing joint access and control. *See United States v. Wright*, 564 F.2d 785 (8th Cir. 1977) (although defendant "occasionally paid" mother for his family's occupancy of her house, "such contributions were insufficient" to make their relationship one of landlord and tenant); *State v. Jones*, 193 Conn. 70, 475 A.2d 1087 (1984) (parents validly consented to search of non-rent-paying minor son's room where door to room was kept closed but not locked, father retained right to enter without permission, and

other family members used the room as well); *State v. Packard*, 389 So.2d 56 (La.1980), *cert. denied*, 450 U.S. 928, 101 S.Ct. 1385, 67 L.Ed.2d 359 (1981) (despite lock on the door, defendant's mother could properly consent to search of room occupied by son and his wife when couple did not pay rent, no evidence that mother relinquished right to access to room, and wife acquiesced in search); *State v. Swenningson*, 297 N.W.2d 405 (N.D.1980) (although son paid rent, father's consent valid when he shared common authority over room); *Sorensen v. State*, 478 S.W.2d 532 (Tex.Cr.App.1972) (parents' consent valid even though son paid $10 per week for rent).

this case Andrew Ham evidently had a subjective expectation of privacy in a room he subleased at his mother's apartment. The critical inquiry is whether this expectation was objectively reasonable.

Concepts borrowed from property law are helpful, though not necessarily dispositive, in such an inquiry. Thus, if an individual maintains exclusive domain over a place, it is likely that his expectation of privacy will be deemed objectively reasonable. Conversely, if someone else has exclusive authority, any expectation of privacy is likely to be unreasonable. In cases where two persons share authority, a reasonable expectation of privacy is doubtful unless supported by additional specific facts showing the existence of a recognized privacy interest.

My colleagues treat this case as one in which Andrew's mother enjoyed "superior" authority over the room that was searched. Andrew's authority is characterized as "subservient." These terms convey no definitive meaning in property law and they do not, in my view, clarify the Fourth Amendment inquiry. Moreover, I disagree with the characterization. The uncontroverted evidence discloses that Andrew and his mother established an informal but actual tenancy in regard to Andrew's room. Andrew was a nineteen-year-old adult. He paid his mother at least one month's rent. After a rental payment became overdue, his mother told him that he would be "evicted." However, no eviction had occurred. Andrew kept the room locked when he and his minor brother were at home. These facts evince an agreement to accord Andrew a substantial measure of privacy in the bedroom.

However, it is equally clear that Andrew did not enjoy exclusive authority. He had no right to exclude his mother entirely. She respected the privacy of the boys' activities while they were in the room, but she freely exercised a right to enter at other times. Thus, the real issue here is one of common authority. This type of authority does not arise in all landlord-tenant relationships, but it may exist upon the facts of a particular case. *Compare State*

*v. Swenningson*, 297 N.W.2d 405 (N.D. 1980) (defendant's father, from whom defendant rented a room, had common authority to consent to search), *with Chapman v. United States*, 365 U.S. 610, 81 S.Ct. 776, 5 L.Ed.2d 828 (1961) (commercial landlord had no authority to consent to search of house he had rented to another). *See also Stoner v. California*, 376 U.S. 483, 84 S.Ct. 889, 11 L.Ed.2d 856 (1964) (hotel clerk could not validly consent to search of patron's room).

The principle of common authority rests upon mutual use of property by persons having joint access or control for most purposes. Each person implicitly acknowledges that the others have a right to enter and inspect the premises. Accordingly, any of them might permit the area to be searched. *State v. Swenningson, supra. Compare State v. Carsey*, 295 Or. 32, 664 P.2d 1085 (1983) (grandparent had no authority to permit search where adult grandchild enjoyed a scrupulously observed privacy interest in rented room at grandparents' home). In common authority cases, the greater the degree of the shared access and control, the less objectively reasonable is an individual's subjective expectation of privacy.

In this case, the district court found a common right of access, if not of control. The finding is well supported by the evidence. As the judge noted, the mother "entered the room regularly to pick up dirty dishes and laundry." She had free access when her sons were not at home. The judge further noted that the mother had an implicit right of access to the room for the purpose of exercising parental supervision over Andrew's minor brother.

Upon this record, I would hold that the mother's common access defeated Andrew's reasonable expectation of privacy. Accordingly, I concur in the result reached by my colleagues—that a valid search was conducted with the mother's consent.