904 P.2d 939

STATE of Idaho, Plaintiff–Appellant,

v.

Joseph Walter McCAUGHEY,
Defendant–Respondent.

No. 21220.

Supreme Court of Idaho,
Twin Falls, March 1995 Term.

Sept. 29, 1995.

Rehearing Denied Nov. 20, 1995.

Alan G. Lance, Attorney General; Douglas A. Werth, Deputy Attorney General, Boise, for appellant. Douglas A. Werth argued.

Roark, Rivers, Baxter & Phillips, Hailey, for respondent. R. Keith Roark argued.

SILAK, Justice.

This is an appeal from an order of the district court suppressing evidence in a criminal action against respondent for trafficking in marijuana. The evidence was obtained without a search warrant on the basis that respondent's wife consented to the search and that the officers reasonably believed she had authority to consent. We reverse the order of the district court and remand for further proceedings consistent with this opinion.

## I.

### FACTS AND PROCEDURAL BACKGROUND

In the early morning hours of June 21, 1993, Respondent Joseph W. McCaughey (McCaughey) came home after a night of

drinking and began beating his wife, Karen. Karen's eleven-year-old daughter called the police. Two deputies from the Jerome County Sheriff's Office, Randy Givens and Wayne Childers, responded to the 911 domestic violence call from the McCaughey residence. They arrived in separate vehicles and Childers' wife Mary was riding with Childers in his car.

Karen told Givens that she had been physically attacked and beaten by McCaughey. Givens observed bruising on her arms and a red face. Because Karen said that she had bruises on her chest, Givens asked Mary Childers if she would examine Karen more closely. While Mary Childers was examining Karen, Karen told her that she believed McCaughey had drugs but did not know if she should tell the police. She later told Givens she had reason to believe McCaughey had large amounts of marijuana in the basement and in the shed.

McCaughey was arrested at the scene for domestic battery and transported to jail by Givens. Around this time, Childers radioed the dispatcher to request a written consent to search form and to advise other police personnel that the situation involved marijuana.

Childers returned to get Karen's statement. At this time, Karen offered to let Childers look in the house. Childers asked Karen if she was married to McCaughey and if she lived there, and she responded affirmatively to both questions. At Karen's suggestion, Childers followed her to the basement door. According to Childers, Karen asked her daughter to go get the keys and the child returned a few seconds later with them. There were two padlocks on the door, which Karen opened. Childers observed scales and what appeared to be marijuana. Karen then led Childers to a detached shed, unlocked the door, and he again observed what appeared to be marijuana. After additional officers arrived on the scene, a written consent to search form was completed and signed by Karen.

McCaughey was charged by criminal complaint with trafficking in twenty-five pounds or more of marijuana pursuant to I.C. § 37–2732B(a)(1)(C), and failing to affix a tax stamp pursuant to I.C. §§ 63–4204—63–4206. McCaughey filed a motion to suppress, challenging the search of "areas and places not covered by a valid search warrant" on the date of his arrest. In November 1993, an evidentiary hearing was held on the motion before Judge Wood, then a magistrate who was acting as interim district judge.

At the hearing, the following testimony was given regarding the relationship between McCaughey and Karen. They were married in August 1987, and lived in the residence at issue with Karen's daughter for about five years. In July 1992, Karen left for California because McCaughey had apparently beaten her three or four times by then. Karen and her daughter returned to the Jerome area in February 1993 and stayed for a short while with Karen's mother. When this arrangement did not work out, McCaughey offered to let them stay with him at the house near Jerome. According to both appellant and respondent, Karen did not intend to reconcile with McCaughey. Although Karen had planned to move to Utah and was slowly packing her things in anticipation of that move, she still had possessions throughout the house at the time of the incident, and was still legally married to McCaughey. Karen and McCaughey have since been divorced.

There was conflicting testimony regarding the nature of Karen and her daughter's authority to enter the basement and shed. Karen testified that McCaughey kept the keys to these locations on a ring that he hung on the wall or in his pants pockets, and that when she moved back in she was given a key to the house, but not a key to the basement room or shed. She testified that McCaughey had never told her she could not use the keys on his key ring, and that after moving back into the house she had access to all parts of the house but had never been down in the basement. Both Karen and her daughter testified that they had never been told not to go to the basement. She did testify that when she had left to go to California in 1992 there was only one padlock on the basement door and that when she returned there were two locks.

McCaughey testified differently. He said he told both Karen and her daughter to stay out of the basement and also told Karen to stay out of the shed or garage. He also testified that the house was owned by his father and that he worked on his father's farm in exchange for rent.

Deputy Childers also testified as to why he believed Karen had the authority to consent to the search of the basement room and shed.

At the conclusion of the hearing, Judge Wood orally commented that he did not believe Karen had the authority to give the police permission to search the two locked rooms, and that in his view the evidence would have to be suppressed. Although Judge Wood gave the prosecution a week to produce additional authority to support its position and the state did not do so, Judge Wood changed his mind, and in a written order dated November 22, 1993, he denied the motion. Pursuant to *Illinois v. Rodriguez*, 497 U.S. 177, 110 S.Ct. 2793, 111 L.Ed.2d 148 (1990), Judge Wood found that Karen had actual authority to consent to the search of the home because she lived on the premises with her daughter on a full time basis, she was married to McCaughey and because her property was located on the premises. Judge Wood also found that the officers reasonably believed Karen had authority to consent to the search.

On the morning McCaughey's trial was to begin, he agreed to enter a conditional plea of guilty to the trafficking charge in exchange for the dismissal of the tax stamp charge. He specifically reserved the right to appeal Judge Wood's decision. Judge Hart agreed to reconsider that ruling, and thereafter granted McCaughey's motion to suppress. Based upon *State v. Guzman*, 122 Idaho 981, 842 P.2d 660 (1992), and *State v. Josephson*, 123 Idaho 790, 852 P.2d 1387 (1993), Judge Hart ruled that this Court abolished the good faith exception principles which provided a partial basis for the holding in *Illinois v. Rodriguez, supra*, and that therefore *Rodriguez* should not be followed. He further found that the ruling in *State v.*

*Ham*, 113 Idaho 405, 744 P.2d 133 (Ct.App. 1987), stands for the proposition that in order for a party to give consent to the search of a residence, the consenting person must have actual authority, and that the facts of this particular case did not meet the requirements of actual authority. The state appeals, limiting its basis for appeal to "whether Judge Hart erred in not finding the consent search lawful based upon Deputy Childers' objectively reasonable belief that Karen McCaughey had common authority over the premises searched."[1]

## II.

### ISSUES ON APPEAL

1. Whether the district court erred in ruling that the holding and reasoning of *Illinois v. Rodriguez*, 497 U.S. 177, 110 S.Ct. 2793, 111 L.Ed.2d 148 (1990), do not apply to the search and seizure provisions of the Idaho Constitution, Art. I, § 17.

2. Whether Deputy Childers, at the time of the search, reasonably believed that Karen McCaughey had common authority over the premises searched.

## III.

### ANALYSIS

**A. BECAUSE THE HOLDING AND REASONING OF *ILLINOIS V. RODRIGUEZ* APPLY TO THE SEARCH AND SEIZURE PROVISIONS OF THE IDAHO CONSTITUTION, ART. I, § 17, THE DISTRICT COURT'S RULING MUST BE REVERSED.**

As a preliminary matter, we note our standard of review. In reviewing the district court's decision granting McCaughey's motion to suppress constitutionally challenged evidence, this Court will overturn the trial court's factual findings only if they are clearly erroneous. *State v. Peightal*, 122 Idaho 5, 7, 830 P.2d 516, 518 (1992). Howev-

---

1. There is no issue in this case as to the proper interpretation of the Fourth Amendment to the United States Constitution.

er, we will undertake a free review as to whether the trial court correctly applied the law to the facts. *State v. Weber*, 116 Idaho 449, 451–52, 776 P.2d 458, 460–61 (1989).

The issue in *Illinois v. Rodriguez*, 497 U.S. 177, 110 S.Ct. 2793, 111 L.Ed.2d 148 (1990), was "whether a warrantless entry is valid when based upon the consent of a third party whom the police, at the time of the entry, reasonably believe to possess common authority over the premises, but who in fact does not do so." 497 U.S. at 179, 110 S.Ct. at 2796. The United States Supreme Court answered in the affirmative. The state argues that the issue presented in this case falls squarely within the reasoning of *Rodriguez*.

*Rodriguez* emphasized that the Fourth Amendment forbids only "unreasonable" searches and seizures. The Supreme Court held that what Rodriguez was assured by the Fourth Amendment was not that no government search of his property would occur unless he consented, but rather that no such search would occur that was "unreasonable". *Id.* at 183–84, 110 S.Ct. at 2799. The Court held:

> It is apparent that in order to satisfy the "reasonableness" requirement of the Fourth Amendment, what is generally demanded of the many factual determinations that must regularly be made by agents of the government—whether the magistrate issuing a warrant, the police officer executing a warrant, or the police officer conducting a search or seizure under one of the exceptions to the warrant requirement—is not that they always be correct, but that they always be reasonable ... We see no reason to depart from this general rule with respect to facts bearing upon the authority to consent to a search. Whether the basis for such authority exists is the sort of recurring factual question to which law enforcement officials must be expected to apply their judgment; and all the Fourth Amendment requires is that they answer it reasonably.

*Id.* at 185–86, 110 S.Ct. at 2800.

The Court then stated:

> [W]hat we hold today does not suggest that law enforcement officers may always

accept a person's invitation to enter premises. Even when the invitation is accompanied by an explicit assertion that the person lives there, the surrounding circumstances could conceivably be such that a reasonable person would doubt its truth and not act upon it without further inquiry.

*Id.* at 188, 110 S.Ct. at 2801. The Supreme Court went on to hold that the determination of consent to enter in the search and seizure context must be judged against an objective standard, *i.e.*, whether the facts available to the officer at the moment would warrant a person of reasonable caution in the belief that the consenting party had authority over the premises. Thus, the Court held that if the answer was in the negative, then a warrantless entry without further inquiry is unlawful unless actual authority exists. *Id.*

With respect to the present case, the district court (Judge Hart) held that the reasoning and holding of *Rodriguez* are not applicable, ruling that under the Idaho Constitution, art. 1, § 17, it is irrelevant whether the conduct of Deputy Childers was objectively reasonable where the third party (Karen McCaughey) lacked actual authority to consent to the search. The district court's conclusion is apparently founded upon two contentions: (1) that Idaho case law has required actual authority for a consent search to be valid, thus tacitly rejecting consent based upon apparent authority; and (2) that *Rodriguez* is based in part upon the good faith exception principles this Court refused to adopt in *State v. Guzman*, 122 Idaho 981, 842 P.2d 660 (1992), and *State v. Josephson*, 123 Idaho 790, 852 P.2d 1387 (1993), and therefore is inapplicable.

This is essentially a case of first impression in Idaho, at least with respect to the district court's first conclusion. The reasoning supplied by the district court in attempting to distinguish *Rodriguez* under independent state constitutional grounds is that under prior Idaho case law, *i.e.*, *State v. Ham*, 113 Idaho 405, 744 P.2d 133 (Ct.App.1987), the only consent authority that exists in Idaho with respect to warrantless searches and seizures is actual authority. In *Ham*, the Court of Appeals held that in order for one

to give consent to a warrantless search that person must have such "mutual use of the property", and "joint access or control for most purposes" that it would be reasonable to recognize that a coinhabitant would have the right to permit inspection. *Ham,* 113 Idaho at 407, 744 P.2d at 135. *See also State v. Johnson,* 110 Idaho 516, 522–23, 716 P.2d 1288, 1294–95 (1986) ("The authority which justifies the third-party consent does not rest upon the law of property ... but rests rather on mutual use of the property by persons generally having joint access or control for most purposes, so that it is reasonable to recognize that any of the co-inhabitants has the right to permit the inspection in his own right and that the others have assumed the risk that one of their number might permit the common area to be searched.") In the present case, the district court concluded that based upon the *Ham* decision, it was clear that the Idaho courts have not carved out an exception to actual authority.

■ We must analyze this case on the basis of whether Idaho recognizes an exception to actual authority to consent to a search, and whether such an exception is consistent with art. 1, § 17 of the Idaho Constitution. Art. 1, § 17 provides:

**Unreasonable searches and seizures prohibited.**—The right of the people to be secure in their persons, houses, papers and effects against unreasonable searches and seizures shall not be violated; and no warrant shall issue without probable cause shown by affidavit, particularly describing the place to be searched and the person or thing to be seized.

While this Court will seriously consider federal law to determine the parameters of our own constitutional provisions, and we may adopt federal precedent under the state constitution, we will only do so to the extent that we believe the federal law is consistent with the protection afforded by our Idaho Constitution. *State v. Guzman,* 122 Idaho at 988, 842 P.2d at 667, *citing State v. Cowen,* 104 Idaho 649, 662 P.2d 230 (1983).

In *State v. Henderson,* 114 Idaho 293, 756 P.2d 1057 (1988), this Court held that, where appropriate, our state constitution can grant more protection than its federal counterpart.

*Id.* at 299, 756 P.2d at 1063. That same year we reaffirmed our holding in *Henderson:*

Today we reaffirm that in interpreting provisions of our constitution that are similar to those of the federal constitution we are free to extend protections under our constitution beyond those granted by the United States Supreme Court under the federal constitution.

*State v. Thompson,* 114 Idaho 746, 748, 760 P.2d 1162, 1164 (1988). Finally, in *State v. Guzman, supra,* we observed that such independent analysis of our state constitution does not necessarily mean that this Court will reach a result different from the United States Supreme Court under art. 1, § 17; but rather:

[I]t only means that we are free to do so, if it is determined that a different rule better effectuates our counterpart Idaho constitutional provision.

122 Idaho at 988, 842 P.2d at 667.

■ With respect to the case at bar, we conclude that the precise issue here has never been before us and find that McCaughey has not persuaded the Court that greater protection should be provided under art. 1, § 17 than under the Fourth Amendment for consent searches where no actual authority was present. The only authority relied upon by McCaughey on appeal and the district court below, for their argument and ruling, respectively, that Idaho has eschewed any exceptions to actual authority when dealing with consent searches, is *State v. Ham,* 113 Idaho 405, 744 P.2d 133 (Ct.App.1987). However, *Ham* is distinguishable from the present case because the Court of Appeals never reached the issue of whether there was an appearance of authority exception to actual authority. The court in *Ham* held that there was actual authority to the consent search and thus did not need to proceed to consider whether an appearance of authority exception existed.

We do not believe that a different rule than that articulated in *Rodriguez, supra,* would better effectuate our counterpart Idaho constitutional provision (art. 1, § 17); moreover, we find the Supreme Court's holding and reasoning in *Rodriguez, supra,* to be

persuasive. Thus, we hold that as long as the police officer reasonably believes that the person giving consent to a warrantless search has the authority to consent, the search is valid and the defendant's right against unreasonable searches and seizures pursuant to the Fourth Amendment to the United States Constitution and art. 1, § 17 of the Idaho Constitution is not violated, even though the consenter has no actual authority to consent.

With respect to the district court's conclusion that *Rodriguez* must be read in conjunction with *State v. Guzman, supra,* and *State v. Josephson, supra,* we disagree. The district court reasoned that *Rodriguez* was founded in part upon the *Leon* good faith exception principles, and that because Idaho did not follow these principles in *Guzman* and *Josephson,* Idaho should not follow *Rodriguez.* The majority opinion in *Rodriguez* does not rely upon *Leon* good-faith principles. The thrust of the *Rodriguez* opinion was that the Fourth Amendment has not required that police and magistrate judges always be factually correct, but rather the proper focus is whether government conduct was objectively reasonable. *Rodriguez* applied these general principles to the consent search setting. The Supreme Court's reasoning was not dependent upon the existence of a good faith exception to the exclusionary rule. In fact, the only time the majority opinion mentioned "good faith" was in its example of a factually incorrect arrest (wrong person arrested) that nonetheless was held reasonable. Thus, we hold that *Guzman* and *Josephson* do not apply to this case.

### B. DEPUTY CHILDERS REASONABLY BELIEVED THAT KAREN McCAUGHEY HAD AUTHORITY TO CONSENT TO THE SEARCH OF THE BASEMENT AND SHED.

■ Judge Wood found the relevant facts known to Deputy Childers at the time of the search were these: Karen lived at the premises with her daughter on a full time basis at the time of the search; Karen was married to McCaughey at the time of the search; Karen's property was located on the premises at the time of the search; Karen produced the keys (via her young daughter) to open the padlocked door to the basement room and the shed. Further, Karen invited Childers to look inside the house because she believed marijuana was present. Childers did not immediately accept the invitation, but first confirmed from Karen that she was married to McCaughey and that she lived at the home. Throughout the time that Childers spent at the McCaughey home that evening, he saw nothing to suggest that Karen's dominion and control over any part of the house was limited.

There is nothing in the record to suggest that Deputy Childers, at the time of the initial search of the residence, knew of the details of the nature of the relationship between Karen and McCaughey, or of the steps McCaughey had apparently taken to lock the basement room and the shed, or of the fact that Karen had seldom, if ever, frequented the basement and shed, or of the fact that Karen had not been given a key to those areas by McCaughey. Because these facts were unknown to Deputy Childers at the time of the search, they are not relevant to the question of whether he reasonably believed Karen could consent to the search.

Thus, we affirm Judge Wood's finding that the officer reasonably believed Karen could consent to the search. We hold that the search of McCaughey's home was reasonable under both the Fourth Amendment and art. 1, § 17 of the Idaho Constitution.

### IV.

### CONCLUSION

We find the reasoning and holding of *Illinois v. Rodriguez* to be persuasive with respect to consent searches and hold that if a law enforcement officer reasonably believes that the third party consenting to the search has common authority over the premises or area to be searched, the search will be valid even though it is ultimately determined that the consenter had no such actual authority. Thus, the Fourth Amendment principles of *Rodriguez* apply equally to art. 1, § 17 of the Idaho Constitution.

We further hold that under the facts and circumstances of this case, District Judge Wood correctly found that Deputy Childers reasonably believed that Karen had authority to consent to the search of the locked basement room and shed, and therefore the search was valid. Thus, McCaughey's right against unreasonable searches and seizures was not violated under either the Fourth Amendment to the United States Constitution or art. 1, § 17 of the Idaho Constitution.

Accordingly, the order of Judge Hart is reversed, and the order of Judge Wood dated November 22, 1993, is affirmed with respect to his finding and conclusion that Deputy Childers acted reasonably in his belief that Karen McCaughey had the authority to consent to the search. The case is remanded for further proceedings consistent with this opinion.

TROUT and SCHROEDER, JJ., concur.

SCHROEDER, Justice, Specially Concurring.

I concur in the reasoning and the result in this case. I add the following comments only by way of further explanation of that concurrence.

In this case the Court has followed the reasoning of the United States Supreme Court in *Illinois v. Rodriguez,* 497 U.S. 177, 110 S.Ct. 2793, 111 L.Ed.2d 148 (1990). Consequently, the United States Supreme Court's interpretation of the Fourth Amendment and this Court's interpretation of Art. 1, § 17, Idaho Constitution, are consistent. There may be instances in which language in the Idaho Constitution that is comparable to language in the United States Constitution is interpreted differently. However, that should only occur if there is an articulable basis to rule that a different meaning is intended in the Idaho Constitution. That may arise from a historical background or a variation in language or constitutional history. A different interpretation should not arise from nothing more than a subjective dislike for a rule.

JOHNSON, Justice, Dissenting.

I respectfully dissent.

In my view, the Court's acceptance of the reasonable belief of authority over the premises exception to the warrant requirement does serious violence to the protections afforded by art. 1, § 17 of our state constitution.

With all due respect to the opinion of the U.S. Supreme Court in *Illinois v. Rodriguez,* 497 U.S. 177, 110 S.Ct. 2793 (1990), I find it is inconsistent with the protection afforded by our state constitution. As I see it, reasonable belief and reasonable search are not synonymous. A warrantless search is *per se* unreasonable unless it is made under one of the recognized exceptions to the warrant requirement; one of these exceptions is a search conducted pursuant to a properly given consent. *State v. Johnson,* 110 Idaho 516, 522, 716 P.2d 1288, 1294 (1986). An officer's reasonable belief that the person giving consent actually had authority to consent, does not create the authority.

McDEVITT, C.J., concurs.