16 P.3d 953

STATE of Idaho, Plaintiff–Respondent,

v.

Lisa L. MISNER (aka Huckbey),
Defendant–Appellant.

No. 25936.

Court of Appeals of Idaho.

Dec. 22, 2000.

William E. Little, Boise, for appellant.

Hon. Alan G. Lance, Attorney General; Karen A. Hudelson, Deputy Attorney General, Boise, for respondent. Karen A. Hudelson argued.

LANSING, Judge.

Lisa L. Misner appeals from the judgment of conviction entered following her conditional guilty plea to one count of possession of a controlled substance. On appeal, Misner challenges the district court's denial of her motion to suppress evidence. For reasons expressed below, we affirm.

## FACTS AND PROCEDURAL HISTORY

This case had its genesis in the effort of a probation officer to contact a felony probationer, Ken Nottingham. As a term of his probation, Nottingham had consented to be subject to searches. Nottingham's probation agreement provided, "[T]he probationer does hereby agree and consent to the search of his person, automobile, real property, and any other property at any time and at any place by any law enforcement officer, and does waive his constitutional right to be free from such searches." Nottingham also signed a supervision agreement that provides, "I will submit to search of my person, residence, vehicle, and/or property, conducted in a reasonable manner by any agent of the division of Field and Community Services."

Nottingham's probation officer, Darin Burrell, asked another probation officer, Ronald Mesler, to make contact with Nottingham. Burrell, on previous attempts, had been unable to find Nottingham. Burrell told Mesler that Nottingham had given his residence address as a particular street number address on Cambria Way in Boise. This address, as it turned out, was Lisa Misner's home. Mesler and Burrell had previously attempted to find Nottingham at that address without success.

On the night in question, Mesler went to Misner's house in another attempt to locate Nottingham. In the interest of safety, Mesler asked Boise police officer Mark Barnett to accompany him. Misner answered Mesler's knock on her door. After identifying himself, Mesler informed Misner that he and Barnett were there in an attempt to contact Nottingham. Misner replied that Nottingham was not there at that time. Mesler asked if the two officers could come inside and look around to ensure that Nottingham was not actually there and just hiding. Misner stepped aside, and the two officers entered the home. Mesler briefly looked through the house in an attempt to locate Nottingham while Barnett stood with Misner in the living room, which was located immediately inside the front door. While conversing with Misner in the living room, Barnett could see drug paraphernalia in the kitchen. Mesler, not finding Nottingham in the house, returned and asked Misner some further questions regarding when Nottingham would return, after which Barnett asked about the drug paraphernalia he observed. Upon questioning by Barnett, but before she was placed under arrest, Misner voluntarily produced marijuana and methamphetamine from her pocket. Thereafter, Misner was arrested and charged with possession of a controlled substance and possession of drug paraphernalia.

Misner filed a motion to suppress evidence of the drugs and paraphernalia on the ground that the officers' entry into her home violated her Fourth Amendment rights. After the district court denied that motion, Misner conditionally pleaded guilty to one felony count of possession of a controlled substance, methamphetamine and/or amphetamine, I.C. § 37-2732(c), reserving her right to appeal the ruling on her suppression motion. On appeal, Misner posits error in the

district court determination that Nottingham possessed authority to consent to a search of the house where Misner lived.

## ANALYSIS

 It is a fundamental principle under the Fourth Amendment to the United States Constitution that "searches and seizures inside a home without a warrant are presumptively unreasonable." *Payton v. New York*, 445 U.S. 573, 586, 100 S.Ct. 1371, 63 L.Ed.2d 639 (1980). *See also Welsh v. Wisconsin*, 466 U.S. 740, 749, 104 S.Ct. 2091, 80 L.Ed.2d 732 (1984); *State v. Revenaugh*, 133 Idaho 774, 776, 992 P.2d 769, 771 (1999); *State v. Curl*, 125 Idaho 224, 225, 869 P.2d 224, 225 (1993). However, this presumption may be overcome by a showing that the search was conducted with the permission of an individual who had authority to consent to a search of the premises. *State v. Johnson*, 110 Idaho 516, 522, 716 P.2d 1288, 1294 (1986); *State v. Abeyta*, 131 Idaho 704, 707, 963 P.2d 387, 390 (Ct. App.1998); *State v. Whiteley*, 124 Idaho 261, 264, 858 P.2d 800, 803 (Ct.App.1993); *State v. Rusho*, 110 Idaho 556, 558–60, 716 P.2d 1328, 1330–32 (Ct.App.1986). Thus, residential searches made pursuant to a probationer's advance consent, which was given as a condition of probation, have been held valid. *State v. Gawron*, 112 Idaho 841, 736 P.2d 1295 (1987).

 When the State contends that a warrantless search was justified by consent, the State bears the burden to prove that the person giving the consent had authority to do so. *Johnson, supra; State v. Benson*, 133 Idaho 152, 155, 983 P.2d 225, 228 (Ct.App. 1999). Such permission to search need not come from the defendant; it may be obtained from a third party who "possessed common authority over or other sufficient relationship to the premises or effects sought to be inspected." *United States v. Matlock*, 415 U.S. 164, 171, 94 S.Ct. 988, 39 L.Ed.2d 242 (1974). Actual authority to consent to a search arises from " 'mutual use of the property by persons generally having joint access or control for most purposes,' as in the case of married couples or joint tenants." *State v. Brauch*, 133 Idaho 215, 219, 984 P.2d 703, 707 (1999) (quoting *United States v. Matlock*, 415 U.S. 164, 171, n. 7, 94 S.Ct. 988, 39 L.Ed.2d 242 (1974)). *See also State v. Ham*, 113 Idaho 405, 744 P.2d 133 (Ct.App.1987) (holding that defendant's mother, who rented a bedroom in her apartment to defendant, possessed sufficient use, control and authority over the premises to give a valid consent to a search of defendant's bedroom).

 Even where actual authority is later found to be lacking, if government agents reasonably believed that the consenting person possessed authority to give permission for a search, the warrantless search will be upheld. *Illinois v. Rodriguez*, 497 U.S. 177, 110 S.Ct. 2793, 111 L.Ed.2d 148 (1990); *Brauch, supra; State v. McCaughey*, 127 Idaho 669, 904 P.2d 939 (1995); *State v. Hawkins*, 131 Idaho 396, 958 P.2d 22 (Ct. App.1998). However, the officers' belief that the person giving consent has authority to do so must be objectively reasonable. The officers' conduct is "judged against an objective standard: would the facts available to the officer at the moment ... 'warrant a man of reasonable caution in the belief' that the consenting party had authority over the premises?" *Rodriguez*, 497 U.S. at 188, 110 S.Ct. 2793. *See also Brauch, supra* (holding that officers reasonably relied on consent of a landlord to search of a house because it appeared that tenants had abandoned the premises); *McCaughey, supra* (holding that where defendant allowed estranged wife and their daughter to temporarily reside with him, officer reasonably relied upon wife's consent to search locked room in basement after being told by wife that she was married to defendant and was living in the home); *Hawkins, supra* (holding that officers reasonably believed owner of a motor home in which the defendant had lived possessed authority to consent to its search after the defendant had packed his personal belongings and left town). Thus, in the present case it was necessary for the district court to determine whether officers Mesler and Barnett reasonably believed that Nottingham resided in Misner's house and thereby possessed common authority to consent to a search of the residence.

■ In denying the suppression motion, the district court found that the officers reasonably believed that Nottingham resided with Misner and that, in fact, Nottingham did reside there. A trial court's findings of fact on a suppression motion must be upheld if they are supported by substantial and competent evidence. *State v. DuValt*, 131 Idaho 550, 552–53, 961 P.2d 641, 643–44 (1998); *State v. Stevens*, 126 Idaho 822, 823, 892 P.2d 889, 890 (1995).

The only evidence in the record regarding Nottingham's residence is the testimony presented by Mesler at the suppression hearing. Mesler testified without objection that Nottingham's regular probation officer, Burrell, told Mesler that Nottingham had reported that he was living in Misner's house. Mesler also testified that he and Burrell had previously gone to that house to look for Nottingham. There is nothing in the record to dispute this evidence. In addition, when Mesler asked Misner whether Nottingham was home, and subsequently asked if he could come inside to look for Nottingham, Misner gave no indication that Nottingham did not reside there. This evidence, particularly Nottingham's own report to a probation officer that he lived at the address of Misner's house, amply supports the trial court's finding that probation officer Mesler and police officer Barnett reasonably believed that it was Nottingham's place of residence that they entered on the night in question.[1] This reasonable belief that Nottingham possessed authority, as an occupant, to consent to a search of the house is sufficient to validate the search. *See Rodriguez, supra; McCaughey, supra; Hawkins, supra.*

■ Assuming Misner did not herself impliedly consent to the entry of the home by Mesler and Barnett, an issue that we need not decide for purposes of this appeal, we recognize that Nottingham's consent to searches of his residence intruded upon the Fourth Amendment privacy interest of Misner and anyone else with whom Nottingham may have resided. As the California Supreme Court has commented, "Inasmuch as authority to search the residence of a parolee extends to areas which are jointly controlled with other occupants of the residence, the authority to search necessarily portends a massive intrusion on the privacy interests of third persons solely because they reside with a parolee." *People v. Burgener*, 41 Cal.3d 505, 224 Cal.Rptr. 112, 714 P.2d 1251, 1269 (1986). However, it must also be recognized that a limitation upon an individual's reasonable expectation of privacy arises whenever there are cohabitants with common authority over a residence. It is well-established that where there is mutual use of property by persons having joint access for most purposes, "any of the co-inhabitants has the right to permit [an] inspection in his own right and that the others have assumed the risk that one of their number might permit the common area to be searched." *Matlock*, 415 U.S. at 171 n. 7, 94 S.Ct. 988. *See also Frazier v. Cupp*, 394 U.S. 731, 740, 89 S.Ct. 1420, 22 L.Ed.2d 684 (1969); *McCaughey*, at 672–73, 904 P.2d at 942–43; *Benson*, at 155–56, 983 P.2d at 228–29. Moreover, if a probationer's advance consent to search of his residence were not deemed sufficient to authorize the search of common areas shared with cohabitants, the value and effectiveness of supervised probation would be compromised. The importance of such searches to effectuate the goals of probation was explained by the Idaho Supreme Court in *Gawron*:

> The condition of probation that defendant consent to a search of his person by a law enforcement officer without a search warrant, is a supervisorial procedure related to his reformation and rehabilitation in light of the offense of which he was convicted.... The purpose of an unexpected, unprovoked search of defendant is to ascertain whether he is complying with his terms of probation; to determine not only whether he disobeys a law, but also whether he obeys the law. Information obtained under such circumstances would afford a valuable measure of the effectiveness of

---

1. No evidence was presented that Nottingham did *not* live in the residence with Misner. In fact, during the search of the house police found Nottingham's clothes and shoes and a backpack containing letters addressed to him.

the supervision given the defendant and his amenability to rehabilitation.

*Gawron,* 112 Idaho at 842–43, 736 P.2d at 1296–97 (quoting *People v. Kern,* 71 Cal. Rptr. 105, 264 Cal.App.2d 962 (1968)).

We would be confronted with a significantly different issue, of course, if the probationer's presence as a cohabitant had been used merely as a pretext to conduct a search targeted at uncovering evidence against a third-party resident of the premises. *See, e.g., State v. Vega,* 110 Idaho 685, 718 P.2d 598 (Ct.App.1986); *United States v. Coleman,* 22 F.3d 126, 129 (7th Cir.1994); *Shea v. Smith,* 966 F.2d 127, 132–33 (3d Cir.1992); *United States v. Cardona,* 903 F.2d 60, 65 (1st Cir.1990); *United States v. Richardson,* 849 F.2d 439, 441 (9th Cir.1988). However, such a "stalking horse" scenario has not been alleged here and is not evidenced by the facts presented to the district court.

Evidence in the record supports the district court's finding that the officers here reasonably believed that Nottingham resided in Misner's house and therefore possessed authority in common with Misner to consent to a search of the premises. Therefore, the search was not violative of Misner's Fourth Amendment rights, and the district court correctly denied her suppression motion. The order of the district court denying Misner's motion to suppress evidence is affirmed.

Chief Judge PERRY concurs.

Judge SCHWARTZMAN, concurring in the result:

*Déjà vu,* from the French, "I've seen this before." Here we have the very same probation officer, accompanied by a city police officer, making a late nocturnal visit in search of an elusive probationer who is not there, but gaining entry to the home and finding instead drugs and paraphernalia. *See State v. Fleenor,* 133 Idaho 552, 989 P.2d 784 (Ct.App.1999). The only major difference is that in this case a frisk of the resident was not necessary, as she voluntarily disgorged the methamphetamine from her pocket upon being questioned.

I concur in the result reached herein, however, because I believe that Misner voluntarily consented to the entry of the officers to look around for Nottingham and verify that he was not hiding there. Once inside, an officer noticed some drug paraphernalia in plain view, and thereafter Misner voluntarily produced drugs from her person. On that basis, I would support the denial of Misner's motion to suppress.

Where I draw the constitutional line, however, is in somehow endowing Nottingham with the authority to peremptorily, and *in absentia,* waive Misner's constitutional rights to the sanctity of her own home on these meager facts. Officer Mesler is there on double hearsay that Nottingham has given this address as his purported residence to another probation officer. Nottingham is not there; nor is he even called as a witness for the State at the suppression hearing to relate his connection with and authority over the premises. Had Misner objected to entry of the two officers and attempted to deny them admittance, I would find a violation of her constitutional rights under this scenario. *Compare State v. Devore,* 134 Idaho 344, 348 at fn. 2, 2 P.3d 153, 157 at fn. 2 (Ct.App. 2000) (where the Department of Corrections took the constitutional high road by having the home owner sign an acknowledgement and consent form that she was living with a probationer and subject to the same restrictions as that individual, including the waiver of Fourth Amendment rights).

The point to be remembered is this: the Fourth Amendment protects persons, and not simply places, against unreasonable searches and seizures. *See Katz v. United States,* 389 U.S. 347, 353, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967). Before Nottingham can waive Misner's Fourth Amendment rights, a stronger showing than demonstrated here needs to be made.