52 P.3d 329

**STATE of Idaho, Plaintiff–Appellant,**

v.

**Kasie BUHLER, Defendant–Respondent.**

No. 27448.

Court of Appeals of Idaho.

July 29, 2002.

Hon. Alan G. Lance, Attorney General; Karen A. Hudelson, Deputy Attorney General, Boise, for appellant Karen A. Hudelson argued.

Molly J. Huskey, Interim State Appellate Public Defender; Charles Isaac Wadams, Deputy Appellate Public Defender, Boise, for respondent. Charles Isaac Wadams argued.

LANSING, Judge.

The State appeals from an order granting Kasie Buhler's motion to suppress evidence found by police during a warrantless search of her residence. Because we agree with the district court that the State failed to prove an exception to the warrant requirement, we affirm.

## I.

### FACTS AND PROCEDURAL HISTORY

Buhler lived in a rented room in a house belonging to Eric Summers, in which Summers also resided. Buhler's contact with law enforcement officials in this case began because of her association with a parolee, Cody Storer. Storer was on parole for convictions in the states of Utah and Nevada, under the supervision of the Idaho Department of Correction pursuant to an interstate compact. As a condition of parole, Storer had agreed to allow searches of his residence and vehicle without a warrant upon reasonable suspicion.

Storer's parole officer, Eileen Wood, received a call from Summers in which Summers requested assistance in removing Storer from his house. Summers reported that for the past couple of days, Storer had been staying with Buhler in the room that Buhler was renting from Summers. Summers told Officer Wood that he believed Storer was selling and using drugs and that when Summers told Storer to leave, Storer responded with a threat and said that he would leave when he wanted to. Based on this information, Wood requested assistance from local police officers to investigate the reported drug activities. While officers were observing the residence, Buhler and Storer left in a pickup driven by Buhler. The officers stopped the pickup. After Storer refused to talk to Wood, the vehicle was searched and a small set of scales was found in the glove compartment.

The officers returned to the residence with Buhler and Storer. After Buhler refused a request to unlock the door, the officers broke in; they did not ask Storer to unlock the door. In a CD case they found approximately one gram of methamphetamine. Under a garbage can liner they found fifteen individu-

ally wrapped methamphetamine stones, each weighing approximately one gram. They also found a few items of men's clothing and four or five pay stubs with Storer's name on them.

After Buhler was charged with possession of a controlled substance with intent to deliver, Idaho Code § 37–2732(a)(1)(A), she moved to suppress the evidence found in the vehicle and in her room. The State did not attempt to justify the warrantless search of Buhler's vehicle. As to the evidence found in Buhler's room, the State argued that the search was justified by Storer's consent, in his parole agreement, to warrantless searches of his residence. The district court held that the State had not proven that Storer resided with Buhler and therefore had not shown that he possessed actual or apparent authority to consent to the search of Buhler's room. Therefore the court suppressed all the evidence found in the residence as well as that found in the vehicle. The State appeals the suppression of the evidence discovered in the residence.

## II.

### ANALYSIS

■ On review of a suppression motion, this Court will defer to the trial court's findings of fact unless they are clearly erroneous, but we exercise free review over the application of constitutional standards to those facts. *State v. McCaughey*, 127 Idaho 669, 671–72, 904 P.2d 939, 941–42 (1995); *State v. Hawkins*, 131 Idaho 396, 400, 958 P.2d 22, 26 (Ct.App.1998). In this case the facts are undisputed, and we are therefore presented with only an issue of law as to whether the facts justified the warrantless search.

■ It is a fundamental tenet of Fourth Amendment jurisprudence that "searches and seizures inside a home without a warrant are presumptively unreasonable." *Payton v. New York*, 445 U.S. 573, 586, 100 S.Ct. 1371, 1380, 63 L.Ed.2d 639, 651 (1980). *See also Welsh v. Wisconsin*, 466 U.S. 740, 749, 104 S.Ct. 2091, 2097, 80 L.Ed.2d 732, 742 (1984); *State v. Revenaugh*, 133 Idaho 774, 776, 992 P.2d 769, 771 (1999); *State v. Curl*, 125 Idaho 224, 225, 869 P.2d 224, 225 (1993); *State v.*

*Misner*, 135 Idaho 277, 279, 16 P.3d 953, 955 (Ct.App.2000). This presumption of unreasonableness can be overcome, however, by a showing that the search was conducted with the consent of an individual with authority to permit to the search. *United States v. Matlock*, 415 U.S. 164, 171, 94 S.Ct. 988, 993, 39 L.Ed.2d 242, 249 (1974); *Misner*, 135 Idaho at 279, 16 P.3d at 955. Consent obtained as a condition of parole provides justification for searching a parolee's residence. *State v. Gawron*, 112 Idaho 841, 843, 736 P.2d 1295, 1297 (1987); *Misner*, 135 Idaho at 279, 16 P.3d at 955.

■ When the State asserts that a warrantless search was conducted with consent, the State bears the burden of proving that the consent was given by one with authority to do so. *Matlock*, 415 U.S. at 177–78, 94 S.Ct. at 996–97, 39 L.Ed.2d at 253–54; *Misner*, 135 Idaho at 279, 16 P.3d at 955. Permission to search need not be obtained from the defendant; it may come from another who "possessed common authority over or other sufficient relationship to the premises or effects sought to be inspected." *Matlock*, 415 U.S. at 171, 94 S.Ct. at 993, 39 L.Ed.2d at 249. *See also Misner*, 135 Idaho at 279, 16 P.3d at 955; *State v. Ham*, 113 Idaho 405, 406, 744 P.2d 133, 134 (Ct.App.1987). Such authority derives from "mutual use of the property by persons generally having joint access or control for most purposes," so that it is reasonable to recognize that any of the co-inhabitants has the right to permit the inspection and that the others have assumed the risk that one of their number might permit the common area to be searched. *Matlock*, 415 U.S. at 171 n. 7, 94 S.Ct. at 993 n. 7, 39 L.Ed.2d at 250 n. 7.

### A. Apparent Authority

■ If police reasonably believed that the consenting person possessed sufficient authority to consent to the search, the warrantless search will be upheld, even if it is later determined that actual authority was lacking. *Illinois v. Rodriguez*, 497 U.S. 177, 188–89, 110 S.Ct. 2793, 2801–02, 111 L.Ed.2d 148, 161–62 (1990); *State v. Brauch*, 133 Idaho 215, 219, 984 P.2d 703, 707 (1999);

*McCaughey*, 127 Idaho at 672–73, 904 P.2d at 942–43; *Misner*, 135 Idaho at 279, 16 P.3d at 955. In *Rodriguez*, officers searched an apartment with consent obtained from a woman who claimed to live there, had furniture and clothing there, and had a key, which she used to open the door for the officers. In reality, the woman had moved out a month earlier and was only an infrequent visitor. Although actual authority to consent was absent, the United States Supreme Court held that the search did not violate the Fourth Amendment because the officers' reliance on the woman's claimed authority over the apartment was reasonable under the circumstances. The Court noted that the Constitution requires only that the officers' belief in the consenter's authority be objectively reasonable, not that it be legally and factually correct. Therefore, in evaluating a claim that officers acted on the consent of a person with apparent authority, the proper inquiry is whether "the facts available to the officer at the moment ... 'warrant a man of reasonable caution in the belief' that the consenting party had authority over the premises?" *Rodriguez*, 497 U.S. at 188, 110 S.Ct. at 2801, 111 L.Ed.2d at 161 (quoting *Terry v. Ohio*, 392 U.S. 1, 21–22, 88 S.Ct. 1868, 1880, 20 L.Ed.2d 889, 906 (1968)). *See also Misner*, 135 Idaho at 279, 16 P.3d at 955; *State v. Hawkins*, 131 Idaho 396, 400–01, 958 P.2d 22, 26–27 (Ct.App.1998). If not, a warrantless entry is unlawful unless actual authority exists. *Rodriguez*, 497 U.S. at 188–89, 110 S.Ct. at 2801–02, 111 L.Ed.2d at 161–62.

With respect to the search of Buhler's room, we must examine whether, on the facts as they appeared to the officers before the entry, the officers entertained a reasonable belief that Storer was a resident and therefore possessed authority to permit a search of the premises. Because this inquiry turns upon the information known to the officers *before* the entry, any evidence of Storer's occupancy discovered after the entry cannot be considered on the question of apparent authority.

The fact that Buhler, the person who was known to be renting the room, was present and was refusing to allow entry, is a significant factor in assessing the reasonableness of the officers' reliance upon Storer's consent. In this respect, the present case is similar to *State v. Benson*, 133 Idaho 152, 158, 983 P.2d 225, 231 (Ct.App.1999), where occupants of a garage-residence loudly objected to the police presence and refused to allow a search. The police removed the two occupants, Benson and Stafford, from the area and then obtained consent from the garage owner, Hilton (Stafford's mother). This Court held that the officers' reliance on Hilton's consent was objectively unreasonable. We stated:

> The detectives never sought to establish Stafford and Benson's interest in the garage, ignored their protests, and merely queried Hilton very cursorily and superficially as to her interest in the property. We find that such deliberate indifference to or conscious avoidance of Benson's and Stafford's interest in the garage, under the totality of the circumstances presented, renders the detectives' reliance on Hilton's apparent authority *objectively unreasonable*. While "[w]e do not hold that police must invariably seek consent from the suspect before relying on a third party's consent[,] ... when the police intentionally bypass a suspect who is present and known by them to possess a superior privacy interest, the validity of third party consent is less certain."

*Benson*, 133 Idaho at 160, 983 P.2d at 233 (quoting *United States v. Impink*, 728 F.2d 1228, 1234 (9th Cir.1984)).

■ In the present case, we conclude that the officers' claim that Storer had apparent authority is similarly unjustified. The only information about Storer's link to the premises known to the police was the information given to the parole officer by the homeowner, Summers. Summers told the parole officer that Storer had been "staying" with Buhler in her rented room for "a couple of days" and that Storer refused to leave when Summers ordered him out. This information gives no indication whether Storer was staying for a few days' visit or staying as a resident. Storer's refusal to leave upon Summers' demand was an act of defiance but not necessarily an assertion of any right to stay as a resident of the premises. Police had no reason to believe that Storer was

paying rent to either Buhler or Summers, and Buhler's home was not the residence that Storer had reported to his parole officer. There was no evidence indicating whether Storer had his own key and free access to Buhler's room or had access only when Buhler admitted him. That the officers asked Buhler, but not Storer, to unlock the door implies that the officers did not believe that Storer was a resident or had independent access to Buhler's room. The police could have sought to clarify the issue of Storer's place of residence by questioning him or Buhler or seeking additional information from Summers, but they elected not to do so. These circumstances amply support the district court's conclusion that the officers' asserted belief that Storer had authority to consent to a search of the room was objectively unreasonable, particularly when Buhler, the known renter of the room, was present and objecting to their entry.

### B. Actual Authority

We must next determine whether, although apparent authority was lacking from the facts known to police officers before the entry, the State nevertheless proved that Storer possessed actual authority over the room, so that his consent validated the search. Our first step is to determine the scope of the evidence that may be considered on the question of actual authority, for the State contends that the district court erred in refusing to consider evidence of Storer's residency found during the search. This evidence included items of men's clothing and four or five pay stubs bearing Storer's name. The district court excluded this evidence on the rationale that evidence found during a search may not be utilized to justify the search.

We have found no judicial authority on the precise question presented, whether evidence found in a search is admissible to show actual authority over the premises by the person who consented to the search. We have found, however, that courts have not limited evidence of actual authority to facts known to officers at the time of the entry. Indeed, this Court in *Ham*, 113 Idaho 405,

744 P.2d 133, considered facts that were not known to the police at the time of the search in determining that the defendant's mother possessed actual authority to consent to a search of the defendant's room. Also of interest on this point is *United States v. Chaidez*, 919 F.2d 1193 (7th Cir.1990), where the court held that information known to the officers did not support a belief that a woman consenting to the search of the defendant's home possessed apparent authority, but the court nevertheless upheld the search because the woman had actual authority over the premises. The finding of actual authority was based upon evidence acquired during and after the search, including women's clothing found in the house, information that utility service to the house was contracted and paid for by the woman, and the landlord's testimony that he rented the house to both the woman and the defendant.[1]

In our view, the approach adopted by the district court in the present case, limiting proof of actual authority to information known to officers before the search, was incorrect. Such a rule eliminates any distinction between actual and apparent authority. It would, in effect, require apparent authority in every case, which is inconsistent with the United States Supreme Court's expression in *Rodriguez*, 497 U.S. at 188–89, 110 S.Ct. at 2801–02, 111 L.Ed.2d at 161–62 that if apparent authority is absent, "then warrantless entry without further inquiry is unlawful *unless actual authority exists.*"

Disallowance of evidence of actual authority acquired after the search is also inconsistent with the rationale for the doctrine allowing searches based upon consent from a third person with common authority over the premises. The underlying theory is that an individual's reasonable expectation of privacy is diminished when the individual resides with others, because cohabitants "have assumed the risk" that one of the others might permit the premises to be searched. *Matlock*, 415 U.S. at 171 n. 7, 94 S.Ct. at 993 n. 7, 39 L.Ed.2d at 250 n. 7; *Misner*, 135 Idaho at 280, 16 P.3d at 956. Under this theory, the extent to which an individual has voluntarily

1. The admissibility of this evidence was not at issue in *Chaidez*.

reduced his or her privacy interest by cohabiting with another depends upon the actual habitation arrangement, not upon what the police knew before obtaining consent from one occupant.

Invalidating searches conducted with the consent of someone with actual authority merely because police had insufficient knowledge of that authority would lead to suppression where there was no violation of the defendant's privacy interest. In *State v. Bower*, 135 Idaho 554, 21 P.3d 491 (Ct.App. 2001), we held that such a result should be avoided. "Use of the exclusionary rule imposes a price upon society in that it often enables the guilty to escape prosecution. Therefore, the exclusionary rule should be employed only when there has *in fact been a violation of the defendant's constitutional rights.*" *Id.* at 558, 21 P.3d at 495 (emphasis in original).

The use of evidence found during a search to prove actual authority for consent must be differentiated from the unquestionable rule that the fruits of a search may not be used to show *probable cause* for the search. *See, e.g., Wong Sun v. United States,* 371 U.S. 471, 484, 83 S.Ct. 407, 415, 9 L.Ed.2d 441, 453 (1963); *United States v. Di Re,* 332 U.S. 581, 595, 68 S.Ct. 222, 228, 92 L.Ed. 210, 220 (1948); *DeVasto v. Faherty,* 658 F.2d 859, 863 (1st Cir.1981). This distinction is readily apparent because the measure of probable cause is *reasonable belief;* that is, probable cause requires a showing that the government is in possession of facts giving rise to probable cause to believe that evidence of a crime will be found in the place sought to be searched. *Illinois v. Gates,* 462 U.S. 213, 238, 103 S.Ct. 2317, 2332, 76 L.Ed.2d 527, 548 (1983); *United States v. Harris,* 403 U.S. 573, 584, 91 S.Ct. 2075, 2082, 29 L.Ed.2d 723, 734 (1971); *Brinegar v. United States,* 338 U.S. 160, 175–76, 69 S.Ct. 1302, 1310–11, 93 L.Ed. 1879, 1890–91 (1949). Actual authority over premises, on the other hand, does not turn at all upon a government agent's knowledge or belief; it turns upon the living arrangements and agreements, formal or informal, of the occupants. Those living arrangements and agreements are not structured or altered by what a police officer knows.

Accordingly, we hold that the State is not limited to relying upon information known to the police at the time of their warrantless entry in order to prove actual authority possessed by the person who consented to the search. That being established, we see no reason to distinguish between evidence found by police during the search and other extraneous evidence that may be used to establish actual authority such as records of property ownership, lease agreements, and utility company billings.

■ Having determined that error was committed by the exclusion of relevant evidence, we must determine whether it is necessary to remand this matter to the district court for reconsideration and new findings of fact on the question of Storer's actual authority. We note that no live testimony was presented on Buhler's suppression motion. Rather, the motion was decided by the district court on the basis of stipulated facts and a transcript of the preliminary hearing. Therefore, the district court was in no better position than this Court to weigh the evidence or determine the credibility of witnesses. In addition, there is no cause for remand if this Court can conclude, as a matter of law, that the State has not met its burden to prove Storer's actual authority even when the improperly omitted evidence is taken into consideration. Therefore, we will examine the sufficiency of the evidence.

We have already concluded that the evidence proffered to show *apparent* authority is insufficient to demonstrate that Storer was a resident rather than a mere guest. The men's clothing and pay stubs found in the search add little to clarify that question. Indeed, the meagerness of this evidence of occupancy by Storer tends to suggest that Storer had not moved in as a resident. We are also struck by the absence of evidence that Storer was no longer occupying the home that he had identified to his parole officer as his place of residence. In light of the paucity of evidence on this issue and the equivocal nature of the evidence that was presented, we conclude that the State did not meet its burden to prove that Storer was a

co-resident of Buhler's rented room, having "joint access or control for most purposes." *Matlock,* 415 U.S. at 171 n. 7, 94 S.Ct. at 993 n. 7, 39 L.Ed.2d at 250 n.7. It follows that the provision of Storer's parole agreement giving his consent to search his residence did not validate the warrantless search of Buhler's room. The police officers' choice to search the room on the basis of that inapplicable consent, rather than to take the more cautious route of obtaining a search warrant, requires suppression of the evidence gained.

## III.

## CONCLUSION

Although the district court erred in limiting the evidence that it would consider in analyzing actual authority, we nevertheless conclude that the court correctly suppressed the evidence found in Buhler's room. Even when the evidence excluded by the district court is considered, the evidence is insufficient to show that officers obtained consent for the warrantless search from a person with actual or apparent authority over the premises. The order of the district court granting Buhler's motion to suppress evidence is therefore affirmed.

Chief Judge PERRY and Judge Pro Tem JUDD concur.