**IN THE COURT OF APPEALS OF THE STATE OF IDAHO**

**Docket Nos. 35519 & 35521**

| | | |
|---|---|---|
| STATE OF IDAHO, | ) | |
| | ) | **2010 Opinion No. 49** |
| Plaintiff-Respondent, | ) | |
| | ) | **Filed: July 15, 2010** |
| v. | ) | |
| | ) | **Stephen W. Kenyon, Clerk** |
| RICHARD H. HANSEN, SR., | ) | |
| | ) | |
| Defendant-Appellant. | ) | |
| | ) | |

Appeal from the District Court of the Third Judicial District, State of Idaho, Canyon County. Hon. Gregory M. Culet, District Judge.

Order denying motion to suppress evidence in Docket No. 35519, <u>reversed</u>, and judgment of conviction, <u>vacated</u>. Judgment of conviction in Docket No. 35521, <u>affirmed</u>.

Molly J. Huskey, State Appellate Public Defender; Justin M. Curtis, Deputy Appellate Public Defender, Boise, for appellant.

Hon. Lawrence G. Wasden, Attorney General; Rosemary Emory, Deputy Attorney General, Boise, for respondent.

---

LANSING, Chief Judge

Richard H. Hansen, Sr. conditionally pleaded guilty to possession of marijuana with intent to deliver, reserving the right to appeal from the district court's denial of his motion to suppress evidence found in a search of his residence pursuant to a warrant. We reverse the denial of the motion, vacate the conviction, and remand.[1]

---

[1]    This is a consolidated appeal from drug-related convictions in two separate criminal cases. In Docket No. 35521, Hansen pleaded guilty to possession of methamphetamine. No motion to suppress was filed in that case and no issues are raised in this appeal regarding that case. The judgment of conviction in Docket No. 35521 will, therefore, be affirmed. We here address only the issue raised in Docket No. 35519.

1

# I.

## BACKGROUND

As a result of evidence found in his bedroom during execution of a search warrant, Hansen was charged with a number of drug-related offenses. He filed a motion to suppress evidence found in his home, contending that the law enforcement officers illegally entered and searched his home before obtaining the warrant and that absent evidence discovered during that search, the search warrant would not have issued. The following facts are drawn from testimony presented at the suppression hearing.

A man named Allen Kirsch was placed on probation in June of 2007. As a term of his probation he consented to searches of his automobile, real property, and any other property by any law enforcement officer or probation officer. Kirsch informed his probation officer that he resided at an address on Highway 44 in Middleton. Kirsch did not appear for his initial meeting with his probation officer, however, and thereafter absconded from probation. In September 2007, two probation officers and two Canyon County Sheriff's Detectives were conducting home visits of probationers and parolees and went to the Highway 44 address looking for Kirsch. They knew that the home was owned by defendant Hansen from previous encounters with him because Hansen had previously been a probationer himself. On the officers' arrival, Kirsch was standing outside in front of the residence. When Kirsch saw the officers approaching, he began running, but he was soon found hiding beneath a shed some distance behind the house.

Upon apprehending Kirsch, the officers asked where he was residing, to which he responded "down at the house," and the officers took Kirsch back to the house. Kirsch then said that he was living in a motor home parked approximately fifty yards behind the house but that he used the bathroom facilities in the house. The officers confirmed that the motor home had no bathroom facilities. Because they remained interested in searching the house, the probation officers called their district manager to inquire how to proceed. The manager said that because of Kirsch's consent to searches as a term of his probation, the officers could search the common areas of the house to which Kirsch had admitted having access, which consisted primarily of the path from the backdoor of the residence to the bathroom and the bathroom itself.[2]

---

[2] The probation officers also testified that upon entering they would not be confined to the common areas of the house, but that they would also be entitled to conduct a protective sweep of

Before entering, the officers knocked and announced their presence, and a man, Gary Bailey, came to the door. Bailey's hair and body were wet and he was wearing only a pair of jeans, leading the officers to believe that he had just showered. The officers asked him whether Kirsch lived in the house. Bailey said no, but that Kirsch used the bathroom in the house. The officers then entered to conduct a search.

A detective found a loaded syringe, a spoon and cotton in the bathroom that were deemed indicative of methamphetamine use.[3] The officers then sought and obtained a warrant to search the entire house for drug evidence and for evidence establishing who lived in the house. In executing the warrant, the officers found evidence in Hansen's bedroom upon which he was charged with possession of methamphetamine with the intent to deliver, possession of marijuana with the intent to deliver, and possession of drug paraphernalia.

Hansen filed a motion to suppress the evidence found in his home on the theory that the initial, warrantless search was unlawful and that the search warrant was issued based upon evidence illegally derived from the first entry. The district court denied the motion. The court held that the consent to searches in Kirsch's probation agreement authorized the initial entry and search because the evidence showed a "sufficient nexus" between Kirsch and the house. Because it upheld this initial search, the district court concluded that the issuance of the search warrant was supported by probable cause and that the drug evidence in Hansen's bedroom therefore was not subject to suppression.

Hansen thereafter conditionally pleaded guilty to possession of marijuana with the intent to deliver, reserving the right to appeal the denial of his motion, and the remaining charges were dismissed. This appeal followed.

## II.

## ANALYSIS

The Fourth Amendment protects the "right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." The "physical entry of

---

the entire residence to ensure that no dangerous person was hiding somewhere. The validity of that position is not at issue in this appeal.

[3] No one was charged with an offense relating to this evidence.

the home is the chief evil against which the wording of the Fourth Amendment is directed . . . ." *United States v. United States Dist. Court for Eastern Dist. of Michigan, Southern Division*, 407 U.S. 297, 313 (1972). *See also Payton v. New York*, 445 U.S. 573, 589-90 (1980). "Establishing that a search is reasonable ordinarily requires that the government demonstrate probable cause to a neutral magistrate and obtain a particularized warrant authorizing the search." *State v. Purdum*, 147 Idaho 206, 208, 207 P.3d 182, 184 (2009) (quoting *United States v. Weikert*, 504 F.3d 1, 6 (1st Cir. 2007)). There are, however, limited exceptions to the warrant requirement for intrusions that are reasonable under the circumstances, such as searches conducted with consent voluntarily given by a person who has the authority to do so. *Schneckloth v. Bustamonte*, 412 U.S. 218, 222 (1973); *Stewart*, 145 Idaho at 644, 181 P.3d at 1252; *Dominguez*, 137 Idaho at 683, 52 P.3d at 327. If the consent was given by someone other than the defendant, the State bears the burden of establishing either that the person had actual authority to consent to the search or that there was apparent authority, i.e., that the officers reasonably believed that the consenting person had actual authority. *Illinois v. Rodriguez*, 497 U.S. 177, 177-78 (1990); *United States v. Matlock*, 415 U.S. 164 (1974); *State v. Fancher*, 145 Idaho 832, 836-39, 186 P.3d 688, 692-95 (Ct. App. 2008). Idaho precedent holds that a probationer's consent to searches given as a condition of probation provides justification for warrantless searches of the probationer's residence. *Purdum*, 147 Idaho at 208-09, 207 P.3d at 184-85; *State v. Gawron,* 112 Idaho 841, 843, 736 P.2d 1295, 1297 (1987); *State v. Buhler*, 137 Idaho 685, 687, 52 P.3d 329, 331 (Ct. App. 2002).

A.      **Actual Authority to Consent to Search**

Actual authority to consent to a search will be found if the consenting person "possessed common authority over or other sufficient relationship to the premises or effects sought to be inspected," as where the defendant and the consenting person are co-habitants. *Matlock*, 415 U.S. at 171. *See also State v. Reynolds*, 146 Idaho 466, 473, 197 P.3d 327, 334 (Ct. App. 2008); *Buhler*, 137 Idaho at 687, 52 P.2d at 331. Such authority derives from, "mutual use of the property by persons generally having joint access or control for most purposes, so that it is reasonable to recognize that any of the co-inhabitants has the right to permit the inspection in his own right and that the others have assumed the risk that one of their number might permit the common area to be searched." *Matlock*, 415 U.S. at 171 n.7; *see also Georgia v. Randolph*, 547 U.S. 103, 110 (2006); *Rodriguez*, 497 U.S. at 181.

Here, the State contends that the initial entry of Hansen's house was permissible because it was done pursuant to Kirsch's consent given as a term of his probation. Hansen argues, however, that the State did not present facts from which it can reasonably be concluded that Kirsch possessed common authority over the house along with the residents, i.e., joint access or control for most purposes, or that the officers reasonably believed that Kirsch had such authority before they entered the home and searched.

The district court held that the warrantless search of the home was justified by Kirsch's consent because the State's evidence showed a "sufficient nexus" between Kirsch and the home. The court based this conclusion on evidence that Kirsch had listed the house's address on probation forms, was observed outside the residence when the officers arrived, when questioned initially said that he lived "down at the house" but later said that he "lived" in the Winnebago behind the house, and admitted using the home's bathroom facilities. The district court erred in this analysis, for the existence of some type of nexus between a consenting person and the place searched is not the correct standard. As noted above, the proper inquiry is whether the State established that Kirsch possessed "joint access or control for most purposes." *Matlock*, 415 U.S. at 171 n.7. The nature of the consenting individual's use or access must be such that it is reasonable for inhabitants to recognize that the individual "has the right to permit inspection in his own right." *Id.*

We conclude that the State fell short of establishing that Kirsch had actual authority to consent to a search of the home or its bathroom. The evidence does not show that he resided there. Although Kirsch initially told officers that he lived "down at the house," he soon modified that to explain that he lived in a motor home parked behind the house and used the bathroom facilities in the house because the motor home was not connected to water. Although the officers were not required to believe this second explanation of Kirsch's living arrangements, it is significant that when the officers called Bailey to the door and asked whether Kirsch lived in the house, Bailey confirmed Kirsch's description of the arrangement[4]--that Kirsch lived in the motor

---

[4] There is no evidence that Bailey was in a position to, or did, overhear Kirsch's conversation with the police.

home but used the bathroom, including the shower, in the house.[5] That Kirsch gave his probation officer the street address of the house as Kirsch's residence address is entirely consistent with his later explanation that he lived in the motor home behind the house. There would appear to be no other address that he could have given. The State presented no evidence concerning most of the ordinary factors that would tend to show residence in or other actual authority over the house, such as evidence that Kirsch's name was on a lease for the home, that he paid rent for it, that he had a key to the premises, that he slept there, that he had the authority to admit or exclude visitors, or that he could enter the home whenever he pleased. Moreover, although the officers twice entered the home looking for, among other things, Kirsch's belongings, papers or personal effects that would tend to establish that he resided there, no evidence was presented that any such items were found.[6] No officer testified that he or she actually believed that Kirsch resided in the house; rather, they contacted the probation officers' district manager to ask for guidance. The officers evidently accepted Kirsch's statement that he lived in the motor home behind the house because they entered and searched it without a warrant.

The State argues that because Kirsch was allowed access on at least some limited basis to the bathroom in the house, he had authority to consent to the officers' entry into the bathroom, where drug evidence was found. We disagree. Generally, mere ability or permission to access a residence for limited purposes does not confer the authority to consent to a search. Our Supreme Court has noted that "[a] landlord does not have apparent authority merely because the landlord has legitimate access to the premises for limited purposes." *State v. Brauch*, 133 Idaho 215, 221,

---

[5] One officer testified, in response to a leading question by the prosecutor, that Bailey said that Kirsch also ate in the house. However, on further examination by defense counsel, that officer retracted the testimony regarding Kirsch eating in the house. The officer acknowledged that he "could not testify one way or the other" as to whether he was told that Kirsch ate in the house. Two other officers testified that they were told that Kirsch used the bathroom facilities but did not mention any use of the kitchen. Therefore, there is no unrecanted evidence that Kirsch had permission to use the kitchen, and the district court made no finding that he did.

[6] Evidence of the consenting person's residence in a home discovered during a warrantless search may be considered on a suppression motion for the limited purpose of showing that the person consenting to the search had actual authority to do so. *Buhler*, 137 Idaho at 689-90, 52 P.3d at 333-34.

984 P.2d 703, 709 (1999). In *State v. McGovern*, 252 N.W.2d 365 (Wis. 1977), it was held that a person who answered the door to a residence when the police knocked but actually lived in a tent in the side yard lacked actual authority to consent. Likewise, in *Petersen v. People*, 939 P.2d 824 (Colo. 1997), a caretaker who stayed at the property from time to time was held not to have actual authority to allow a search. And the Tenth Circuit Court of Appeals held in *United States v. Cos*, 498 F.3d 1115, 1127 (10th Cir. 2007), that the girlfriend who was an occasional overnight guest of the home's resident did not have actual authority to permit a search. *See also United States v. Chaidez*, 919 F.2d 1193, 1201 (7th Cir. 1990) (no apparent authority where woman told the police that she did not live in the house and was there only to do the laundry); *United States v. Warner*, 843 F.2d 401, 403 (9th Cir. 1988) (landlord with permission to enter in defendant's absence to make repairs); *United States v. Harris*, 534 F.2d 95, 96 (7th Cir. 1976) (person with permission to use the apartment but no key); *People v. Walter*, 890 P.2d 240, 242-43 (Colo. Ct. App. 1994) (babysitter); *People v. Wagner*, 304 N.W.2d 517 (Mich. Ct. App. 1981) (overnight guest); *State v. Manns*, 370 N.W.2d 157 (Neb. 1985) (friend); *United States v. Corral*, 339 F. Supp. 2d 781, 791-92 (W.D. Tex. 2004) (housekeeper). The State's showing that Kirsch had permission to use bathroom facilities in Hansen's house does not establish that he had "joint access or control for most purposes." The evidence does not even show whether Kirsch had a key and could enter whenever he wished or could enter only when a resident was at home. There was no evidence that the residents had expressly or impliedly authorized Kirsch to admit others into the house. Kirsch's mere permission to use the bathroom in the home did not, in our view, confer "the right to permit inspection" of the bathroom such that inhabitants of the home had assumed that risk. *See Matlock*, 415 U.S. at 171 n.7. Therefore, the State did not establish that Kirsch had actual authority to consent to a search of any area of Hansen's home.

**B.     Apparent Authority to Consent to Search**

Although the State does not assert on appeal that apparent authority existed, and the district court made no finding in this regard, we will consider it because it is the duty of this Court to determine the actual lawfulness of the warrantless search, not merely the merits of the justification proffered by the State. *See State v. Bower*, 135 Idaho 554, 558, 21 P.3d 491, 495 (Ct. App. 2001).

Where it is later established that a third party who consented to a search lacked actual authority to consent, the search may still be upheld if the law enforcement officers reasonably

7

believed that actual authority existed. *Rodriguez*, 497 U.S. 177; *State v. Hawkins*, 131 Idaho 396, 400, 958 P.2d 22, 26 (Ct. App. 1998). Officers must have an objectively reasonable belief that the person giving consent has the authority to do so. That is, the determination must "be judged against an objective standard: would the facts available to the officer at the moment . . . 'warrant a man of reasonable caution in the belief' that the consenting party had authority over the premises?" *Rodriguez*, 497 U.S. at 188 (quoting *Terry v. Ohio*, 392 U.S. 1, 21-22 (1968)). Therefore, to assess whether apparent authority exists, "one must look for indicia of actual authority." *United States v. Rosario*, 962 F.2d 733, 737 (7th Cir. 1992) (quoting *United States v. Miller*, 800 F.2d 129, 134 (7th Cir. 1986)).

Where circumstances known to the officers give reason to doubt a consenting party's authority over the premises, officers may be required to inquire further before relying upon the consent. *See Rodriguez*, 497 U.S. at 186; *State v. Benson*, 133 Idaho 152, 159-60, 983 P.2d 225, 232-33 (Ct. App. 1999). According to *Rodriguez*, "Even when the invitation [to search] is accompanied by an explicit assertion that the person lives there, the surrounding circumstances could conceivably be such that a reasonable person would doubt its truth and not act upon it without further inquiry." *Rodriguez*, 497 U.S. at 186.

Here, Kirsch's initial statement to officers that he lived "down at the house" might have been sufficient to demonstrate apparent authority, but Kirsch quickly modified that statement with his assertion that he actually lived in the motor home and only used the bathroom in the house. The officers then made further inquiry of the man who answered the door at the house, and he confirmed that Kirsch did not reside there, but had use of the bathroom only, further dissipating any appearance of apparent authority created by Kirsch's initial statement.

The only evidence of Kirsch's association with the searched premises possessed by the officers is that which we have discussed above and have held does not show actual authority. Because this evidence, viewed objectively, does not support a belief that Kirsch had authority over Hansen's home, apparent authority is not demonstrated.

## C.    Invalidity of Search Warrant

The criminal charges against Hansen were based on evidence discovered during the execution of a search warrant that was issued after the initial warrantless entry. Because that initial entry was illegal, the officers' observation of drug evidence in the bathroom was tainted and could not properly be relied upon to support issuance of a warrant. *State v. Johnson*, 110

Idaho 516, 526, 716 P.2d 1288, 1298 (1986); *State v. Bunting*, 142 Idaho 908, 914, 136 P.3d 379, 384 (Ct. App. 2006). The State bore the burden of showing that "no information gained from the illegal entry affected either the law enforcement officers' decision to seek a warrant or the magistrate's decision to grant it." *Murray v. United States*, 487 U.S. 533, 540 (1988). *See also State v. Cardenas*, 143 Idaho 903, 908-09, 155 P.3d 704, 709-10 (Ct. App. 2006). Here, the State showed neither, but we need discuss only the latter. When the tainted evidence of the officers' observation of drug evidence in the bathroom during the warrantless search is excluded, probable cause for issuance of the search warrant is not shown. Therefore, the evidence discovered in Hansen's bedroom must be suppressed.

### III.

### CONCLUSION

In Docket No. 35519, we reverse the denial of Hansen's motion to suppress evidence, vacate the judgment of conviction, and remand for further proceedings consistent with this opinion. The judgment of conviction in Docket No. 35521, not having been challenged on appeal, is affirmed.

Judge MELANSON **CONCURS.**

Judge GRATTON, **DISSENTING**.

## A.     Actual Authority

As noted by the majority, actual authority to consent to a search will be found if the consenting person "possessed common authority over *or* other sufficient relationship to the premises or effects sought to be inspected." *United States v. Matlock*, 415 U.S. 164, 171 (1974) (emphasis added). The disjunctive "or" in the standard from *Matlock* is important here. The majority applies the "possessed common authority over" clause to the exclusion of the "other sufficient relationship to the premises" clause. As set forth below, the district court, after quoting the entire *Matlock* standard, found a "sufficient nexus between Mr. Kirsch and the residence . . . to give probation and parole the right to search the common areas of that house, not including Mr. Hansen's locked bedroom, but certainly the bathroom." It cannot be gainsaid that the district court's use of the phrase "sufficient nexus," is in any way different than the phrase "sufficient relationship" used in *Matlock*. Thus, the district court applied the second clause of the *Matlock* standard. Yet, the majority concludes that the district court erred because "the existence of some type of nexus between a consenting person and the place searched is not the

9

correct standard," rather "the proper inquiry is whether the State established that Kirsch possessed 'joint access or control for most purposes.' *Matlock*, 415 U.S. at 171, n.7." On the contrary, the district court understood the standard and applied it correctly to the facts of this case.

The district court performed a thorough review of the applicable law, which is remarkably similar to the majority's recitation of the standards and is worthy of repeating here:

> The Fourth Amendment to the United States Constitution and Idaho's Constitution Article I, Section 17 both prohibit unreasonable searches. . . . If the house -- or entry into a home is made without a warrant, it is deemed unreasonable, an unreasonable search, unless the State meets the burden, and the burden is on the State to demonstrate that the search fell within a recognized exception to the warrant requirement. A number of cases including State versus Tucker . . . State versus [Braendle] . . . all say that.
>
> Now, the next question we have to address is whether or not the State has established an exception to the warrant requirement, one of the well-recognized exceptions to the warrant [] requirement, one of which is consent. The State has the burden of proving the consent is given by one with authority to do so. That's Matlock . . . ; [Misner] . . . .
>
> Permission to search need not be obtained from a defendant. It may come from another who possesses common authority over the others, or other sufficient relationship to the premises sought to be inspected. Again, Matlock, and [Misner].
>
> Such authority may derive from mutual use of the property by persons generally having joint access or control for most purposes. So it is reasonable to recognize that any of the co-inhabitants has a right to permit the inspection. And if the others have assumed the risk, that one of their number might permit the common area to be searched. That's State versus [Buhler] . . . .
>
> A warrantless search may be conducted with the consent of a third party who shares control of the premises or items to be searched. Again, Matlock. Where two persons have equal right to use or occupy a premises, either may give consent to search. And the evidence as disclosed can be used against either.
>
> Idaho's also long-recognized the probationer's exception to the reduced expectation of privacy. State versus [Gawron] . . . . The authority to consent for a probationer, an advanced waiver of the Fourth Amendment rights.

The district court found that Kirsch had waived his Fourth Amendment rights. One of the special conditions of his probation was that he "agree and consent to the search of his person, automobile, real property, and any other property, at any time, and at any place, by any law enforcement officer, peace officer, or probation officer, and does waive his constitutional rights to be free from such searches." The district court considered whether Kirsch's waiver applied to the specific residence on Highway 44. The court found that Kirsch had listed the house's

10

address on his probation check-in form, that he gave that address to police when arrested on an unrelated matter, that his probation officer left cards at the house but never received a call from anyone indicating Kirsch did not reside there, that he was standing in front of the house when the officers arrived, and that he gave conflicting statements as to whether he lived in the house or in the Winnebago behind the house. The court also found that the evidence established Kirsch had the "right to shower and use the phone," that the officers examined the Winnebago and confirmed that it did not have water or power, and that the man that answered the door, Gary Bailey, told officers that Kirsch "entered the house for the purpose of using the shower and the bathroom -- or the shower, at least, in the bathroom." The court further found that the officer's testimony that Hansen's bedroom was locked was "consistent with others using the house." Based upon these findings, the court concluded that there was a "sufficient nexus between Mr. Kirsch and the residence . . . to give probation and parole the right to search the common areas of that house, not including Mr. Hansen's locked bedroom, but certainly the bathroom."

As noted, the majority finds error in the district court's application of the "sufficient nexus," i.e., "sufficient relationship" standard. Yet, clearly the Supreme Court recognized the sufficient relationship standard in holding that the prosecution may prove valid consent by showing that "permission to search was obtained from a third party who possessed common authority over *or other sufficient relationship to the premises or effects sought to be inspected*." *Matlock*, 415 U.S. at 171 (emphasis added). While the majority quotes the "sufficient relationship" language from *Matlock,* it thereafter completely ignores it, focusing rather on "joint access or control." The joint access or control language stems from a footnote that the *Matlock* Court added to explain the principle of common authority:

> Common authority is, of course, not to be implied from the mere property interest a third party has in the property. The authority which justifies the third-party consent does not rest upon the law of property, with its attendant historical and legal refinements, *see Chapman v. United States*, 365 U.S. 610, 81 S. Ct. 776, 5 L. Ed. 2d 828 (1961) (landlord could not validly consent to the search of a house he had rented to another), *Stoner v. California*, 376 U.S. 483, 84 S. Ct. 889, 11 L. Ed. 2d 856 (1964) (night hotel clerk could not validly consent to search of customer's room) but rests rather on mutual use of the property by persons generally having joint access or control for most purposes, so that it is reasonable to recognize that any of the co-inhabitants has the right to permit the inspection in his own right and that the others have assumed the risk that one of their number might permit the common area to be searched.

11

*Matlock*, 415 U.S. at 171, n.7 (underlining added). The majority's analysis, in my view, fails to recognize all of the language set forth in *Matlock* and inappropriately focuses on one clause of the standard to the exclusion of the other.

Thus, authority to consent exists where a third party has common authority, i.e., joint access or control for most purposes, **or** a sufficient relationship to the premises or items to be searched. *Id.*[1] In either case, a court must evaluate the facts and circumstances presented to determine whether the State has proven valid consent from a person possessing the necessary authority. I would hold that based upon the facts and circumstances presented, the district court properly concluded that Kirsch had the requisite authority to consent to a search of the common area of the residence on Highway 44. A review of the facts, which the district court fully considered and evaluated, demonstrates that the State presented sufficient evidence that Kirsch had actual authority such that he could, as the district court concluded, "give probation and parole the right to search the common areas of that house, not including Mr. Hansen's locked bedroom, but certainly the bathroom."

In this case, the State submitted evidence that when Kirsch was placed on probation in June 2007, he filled out a check-in form listing a telephone number and address. The address Kirsch reported was the residence on Highway 44 in Middleton. Approximately three months after Kirsch had been placed on probation, and after repeated efforts to contact him had failed, his probation officer, Annie Haynes, along with another probation officer, Todd Murphy, and two sheriff's deputies, conducted a home visit at the address Kirsch had reported.

When the officers arrived, Kirsch, who was standing in front of the same house he had listed on his check-in form, began running, but was soon apprehended. Rather than immediately search the residence that Kirsch had identified three months earlier as his physical address, the officers continued to investigate and asked Kirsch to confirm where he was living and he responded, "down at the house." The majority notes that this statement "might have been sufficient to demonstrate actual authority, but Kirsch quickly modified that statement with the

---

[1] The majority of courts addressing this issue primarily discuss the principle of common authority. However, even in those cases, the entire *Matlock* standard, including the "sufficient relationship" language is put forth. *See State v. Barker*, 136 Idaho 728, 731, 40 P.3d 86, 89 (2002); *State v. Johnson*, 110 Idaho 516, 522, 716 P.2d 1288, 1294 (1986); *State v. Buhler*, 137 Idaho 685, 687, 52 P.3d 329, 331 (Ct. App. 2002); *State v. Misner*, 135 Idaho 277, 279, 16 P.3d 953, 955 (Ct. App. 2000).

assertion that he actually lived in the motor home and only used the bathroom in the house." However, the majority also acknowledges that "the officers were not required to believe this second explanation of Kirsch's living arrangements." Indeed, Haynes testified that "[Kirsch] couldn't make up his mind as to where he was staying," because he stated that "he was living in the motor home, using the house for a restroom, telephone and shower," and then "he would switch back, saying that he was living in the house."

Although not required to believe Kirsch's second explanation of his living arrangements, the officers, in an abundance of caution, investigated Kirsch's claim that he lived in the Winnebago, rather than just searching the residence that Kirsch listed on the check-in form. Their investigation revealed that there was no water or power available to the Winnebago. The officers inquired as to where Kirsch showered, ate, and used the bathroom, to which he responded that he showered and used the bathroom in the house. Based upon the living arrangements as described to them, the officers decided that they would go in the house and check these common areas for any obvious probation violations. They knocked and announced themselves, but no one answered the door. Again, instead of just entering the house and pursuant to department policy, Murphy called the district manager as officers must get permission to go inside where no one answers the door due to officer safety. The district manager informed them that they could go inside and check the common areas of the house.

The officers knocked and announced themselves again, and a man, identified as Gary Bailey, came to the door. He was wet, wearing only jeans, and appeared to have just come from the bathroom. Again the officers chose to investigate the living arrangements further and "conferred with [Bailey]." On direct examination by defense counsel, Officer Murphy stated that Bailey said Kirsch used the "bathroom facilities, kitchen area," and later, that Kirsch "shared the bathroom and whatnot." (Emphasis added.) On cross-examination by the State, Officer Murphy confirmed that Bailey said Kirsch used the bathroom and ate in the house. On redirect examination, Officer Murphy stated that he was not sure that "he" said that "he" ate in the house. It is not clear whether what "he" said was referring to Kirsch or Bailey. Nonetheless, Officer Haynes testified that Kirsch said he used the bathroom facilities and the phone, which was presumably not in the bathroom. Based upon this and other testimony, the district court concluded that "probation and parole [had] the right to search the common areas of that house, not including Mr. Hansen's locked bedroom, but certainly the bathroom." Since the officers

confined their eventual search to the bathroom, where they found drugs and drug paraphernalia, we can limit the common area analysis to the bathroom facilities.

I agree with the majority that Bailey's testimony is significant. Here, an independent source, who had all the appearance of living in the house, confirmed that Kirsch's living arrangements were that he slept in the Winnebago and "shared" the bathroom facilities in the house. The fact that Kirsch's "bedroom" happened to be the Winnebago behind the house does not negate the fact that Kirsch had "joint access and control" and/or a "sufficient relationship" to the house such that he shared the common area, "certainly" the bathroom facilities. In other words, where a third party has "joint access or control" over or a "sufficient relationship" to a specific area or item, such person may give valid consent. Common authority is not restricted to a single residence or dwelling. If the third party has control over or joint access to any property, common authority exists. *State v. Zimmerman*, 529 N.W.2d 171, 175 (N.D., 1995). *See also State v. Barker*, 136 Idaho 728, 731, 40 P.3d 86, 89 (2002) (where parolee had waived his rights as a condition of parole, such a waiver constituted valid consent to search any place where the parolee may reside, including the defendant's apartment where the parolee was residing, even though the parolee's last reported residence was in a different county).

Thus, even under the common authority standard, Kirsch had actual authority to consent to a search. As the *Matlock* Court stated:

> Common authority is, of course, not to be implied from the mere property interest a third party has in the property. The authority which justifies the third-party consent does not rest upon the law of property, with its attendant historical and legal refinements . . . but rests rather on mutual use of the property by persons generally having joint access or control for most purposes, so that it is reasonable to recognize that any of the co-inhabitants has the right to permit the inspection in his own right and that the others have assumed the risk that one of their number might permit the common area to be searched.

*Matlock*, 415 U.S. at 171, n.7. The State was not required to prove, as the majority opinion suggests, that Kirsch's name was on the lease, that he paid rent, that he had a key, or that he slept there. While these facts may be indicative of actual authority, they are not fixed prerequisites for such a finding. Indeed, authority does not rest on mere property interests, but rather on mutual use of the property by persons generally having joint access or control for most purposes. *Id.* Because Kirsch was a mutual user of the bathroom, having joint access or control to that area, it is irrelevant that no lease was discovered bearing his name.

14

The common authority standard includes the question of whether co-inhabitants have "assumed the risk that one of their number might permit the common area to be searched." *Matlock*, 415 U.S. at 171, n.7. Here, too, the evidence supports the district court's finding that probation and parole had the "right to search the common areas of that house, not including Mr. Hansen's locked bedroom, but certainly the bathroom." According to both Kirsch and Bailey, Kirsch shared, at least, the bathroom facilities. Kirsch also used the phone. Bailey also had access to the common area of the house. However, Hansen's bedroom was locked. The fact that Hansen locked his bedroom door was, as the district court found, "consistent with others using the house." Both Kirsch and Bailey had access or control to Hansen's house, and Hansen presented no evidence to the contrary. Thus, the testimony supports the district court's inference that while Hansen had manifested an expectation of privacy in his bedroom, he assumed the risk that other users of the house could consent to a search of the common areas which they shared.

The majority cites a number of cases for the general proposition that "mere ability or permission to access a residence for limited purposes does not confer the authority to consent to a search." While I generally agree with this broad proposition, it is not applicable in this case, and neither are the cases cited. Kirsch was not a landlord, an overnight guest, a caretaker, a housekeeper, or a babysitter. He was not a friend visiting the house temporarily or an individual who was just using the laundry facilities in the house. The majority states that there was no evidence that Kirsch could enter the house whenever he pleased or only when someone else was in the house. However, the district court found that Kirsch had the "*right* to shower and use the phone." (Emphasis added.) When a decision on a motion to suppress is challenged, we accept the trial court's findings of fact that are supported by substantial evidence, *State v. Atkinson*, 128 Idaho 559, 561, 916 P.2d 1284, 1286 (Ct. App. 1996), and, in this case, we have no basis upon which to disregard the district court's findings. This was not a case of permission to access a residence for limited purposes. The district court was free to draw the reasonable factual inference, *State v. Schevers*, 132 Idaho 786, 789, 979 P.2d 659, 662 (Ct. App. 1999), that Kirsch's use of the bathroom was a necessary part of the living arrangement, making the bathroom part of the common area. It is not for this Court to infer or speculate as to whether Kirsch was required to get permission every time he wanted to use the restroom, a clearly less reasonable inference than that drawn by the district court. Kirsch lived on the property in the Winnebago and used, as a necessary part of that living arrangement, the bathroom facilities of

15

the house. This living arrangement demonstrates, as the district court found, Kirsch's mutual use of the "common areas of that house, not including Mr. Hansen's locked bedroom, but certainly the bathroom." Thus, Kirsch had actual authority, under either *Matlock* standard, to consent to a search of the common area.

## B.    Apparent Authority

Even assuming that the State's evidence was insufficient to demonstrate actual authority, it was sufficient to establish apparent authority. The majority correctly states, "[w]here it is later established that a third party who consented to a search lacked actual authority to consent, the search may still be upheld if the law enforcement officers reasonably believed that actual authority existed." However, as the United States Supreme Court pointed out in *Illinois v. Rodriguez*, 497 U.S. 177 (1990), the case setting forth the doctrine of apparent authority, the question regarding the validity of a search always hinges on its reasonableness.

As the *Rodriguez* Court highlighted: "What [any defendant] is assured by the Fourth Amendment itself . . . is not that no government search of his house will occur unless he consents; but that no such search will occur that is 'unreasonable.' U.S. Const., Amdt. 4." *Rodriguez*, 497 U.S. at 183. The Court further explained:

> It is apparent that in order to satisfy the "reasonableness" requirement of the Fourth Amendment, what is generally demanded of the many factual determinations that must regularly be made by agents of the government--whether the magistrate issuing a warrant, the police officer executing a warrant, or the police officer conducting a search or seizure under one of the exceptions to the warrant requirement--is not that they always be correct, but that they always be reasonable. As we put it in *Brinegar v. United States*, 338 U.S. 160, 176, 69 S. Ct. 1302, 1311, 93 L. Ed. 1879 (1949):
>
> > "Because many situations which confront officers in the course of executing their duties are more or less ambiguous, room must be allowed for some mistakes on their part. But the mistakes must be those of reasonable men, acting on facts leading sensibly to their conclusions of probability."
>
> We see no reason to depart from this general rule with respect to facts bearing upon the authority to consent to a search. Whether the basis for such authority exists is the sort of recurring factual question to which law enforcement officials must be expected to apply their judgment; and all the Fourth Amendment requires is that they answer it reasonably. The Constitution is no more violated when officers enter without a warrant because they reasonably (though erroneously) believe that the person who has consented to their entry is a resident of the premises, than it is violated when they enter without a warrant because they

reasonably (though erroneously) believe they are in pursuit of a violent felon who is about to escape.

*Rodriguez*, 497 U.S. at 185-86. Thus, the Court concluded:

> As with other factual determinations bearing upon search and seizure, determination of consent to enter must "be judged against an objective standard: would the facts available to the officer at the moment . . . 'warrant a man of reasonable caution in the belief'" that the consenting party had authority over the premises? *Terry v. Ohio*, 392 U.S. 1, 21-22, 88 S. Ct. 1868, 1880, 20 L. Ed. 2d 889 (1968).

*Rodriguez*, 497 U.S. at 188.

The evidence demonstrates that Kirsch had apparent authority to consent to a search. The officers repeatedly stated that, based upon the information gathered, they believed that Kirsch had access to, and they could search, the common area of the house, including the bathroom facilities. The question is whether that belief was *reasonable*. I conclude that it was.

As noted above, Kirsch listed the Highway 44 residence on his probation check-in form. He also gave that address when he was arrested on an unrelated offense one or two months prior to the search in this case. Thus, the officers reasonably believed that this was Kirsch's address when they arrived to conduct a home visit. Kirsch was standing in front of the house when the officers drove up. He told them that he lived "down at the house." When they got to the house, he told them that he lived in the Winnebago, but that he used the house for the shower, telephone, and bathroom. The officers did not rush to search the house. Rather, they investigated Kirsch's claim. Upon examining the Winnebago, the officers discovered that there was no water or power. Therefore, it was reasonable to believe that Kirsch used the house for the shower and bathroom. When Bailey came out, he confirmed Kirsch's account of the living arrangement, stating that Kirsch "shared" the bathroom facilities. Having just received confirmation of the living arrangement, it was reasonable for the officers to believe that Kirsch had access to common areas of the house, particularly the bathroom.

There is more evidence supporting a finding of apparent authority in this case than this Court previously held was sufficient in *State v. Misner*, 135 Idaho 277, 16 P.3d 953 (Ct. App. 2000). In that case, a probation officer, Darin Burrell, who was trying to make contact with his assigned probationer, Ken Nottingham, asked another probation officer, Ronald Mesler, to check a particular residence that Nottingham had given as his address. Burrell had previously

attempted to find Nottingham at that address without success. The address, as it turned out, was the home of the defendant, Lisa Misner. Mesler went to Misner's home looking for Nottingham. Misner answered Mesler's knock on her door, and Mesler explained that he was attempting to make contact with Nottingham. Misner responded that Nottingham was not there. Mesler asked whether they could come inside to ensure that Nottingham was not just hiding, and Misner stepped aside. While Mesler briefly checked the house for Nottingham, the accompanying police officer noticed drug paraphernalia in the kitchen. Upon questioning, Misner voluntarily produced drugs, for which she was arrested and charged. *Misner*, 135 Idaho at 278, 16 P.3d at 954.

The trial court concluded that the officers reasonably believed that Nottingham resided with Misner and that, in fact, Nottingham did live there. *Id.* at 280, 16 P.3d at 956. This Court affirmed the district court, reasoning:

> The only evidence in the record regarding Nottingham's residence is the testimony presented by Mesler at the suppression hearing. Mesler testified without objection that Nottingham's regular probation officer, Burrell, told Mesler that Nottingham had reported that he was living in Misner's house. Mesler also testified that he and Burrell had previously gone to that house to look for Nottingham. There is nothing in the record to dispute this evidence. In addition, when Mesler asked Misner whether Nottingham was home, and subsequently asked if he could come inside to look for Nottingham, Misner gave no indication that Nottingham did not reside there. This evidence, particularly Nottingham's own report to a probation officer that he lived at the address of Misner's house, amply supports the trial court's finding that probation officer Mesler and police officer Barnett reasonably believed that it was Nottingham's place of residence that they entered on the night in question. This reasonable belief that Nottingham possessed authority, as an occupant, to consent to a search of the house is sufficient to validate the search. *See Rodriguez*, *supra*; *McCaughey*, *supra*; *Hawkins*, *supra*.

*Misner*, 135 Idaho at 280, 16 P.3d at 956 (footnote omitted). Thus, we concluded that because the officers had information that a probationer lived at a certain residence, which information was not affirmatively disputed by the owner, the officers had a reasonable belief that the probationer possessed authority.

Here, the majority states that the officers "made further inquiry of [Bailey], and he confirmed that Kirsch did not reside there, but had use of the bathroom only, further dissipating any appearance of apparent authority created by Kirsch's initial statement [that he lived 'down at the house']." The majority incorrectly focuses on Kirsch's authority to consent to a search of the

18

*entire* house. The officers never testified that they believed they could rummage through the entire house. Rather, they testified that they believed Kirsch had access to the common area, particularly, the bathroom. This belief was reasonable in light of the fact that they had investigated Kirsch's claim and received confirmation as to the living arrangement from Bailey. The district court fully considered all of the testimony in holding that Kirsch had authority such that he could consent to a search of the "common areas of that house, not including Mr. Hansen's locked bedroom, *but certainly the bathroom*." (Emphasis added.)

The officers went to the bathroom first, where they located the drugs and drug paraphernalia. At that point the officers stopped their search and obtained a warrant to search the entire house. There is no indication in the record, as the majority opinion suggests, that Kirsch's access to the bathroom was limited in any way. Thus, it was reasonable for the officers to conclude, based on the information available to them, which included the statements of both Kirsch and Bailey, that Kirsch had "joint access and control" and a "sufficient relationship" to the common areas of the house and, specifically, the bathroom.

C.      **Validity of Search Warrant**

When probable cause to issue a search warrant is challenged on appeal, the reviewing court's function is to ensure that the magistrate had a substantial basis for concluding that probable cause existed. *Illinois v. Gates*, 462 U.S. 213, 239 (1983); *State v. Josephson*, 123 Idaho 790, 792, 852 P.2d 1387, 1389 (1993); *State v. Lang*, 105 Idaho 683, 684, 672 P.2d 561, 562 (1983). In this evaluation, great deference is paid to the magistrate's determination. *Gates*, 462 U.S. at 236; *State v. Wilson*, 130 Idaho 213, 215, 938 P.2d 1251, 1253 (Ct. App. 1997). The test for reviewing the magistrate's action is whether he or she abused his or her discretion in finding that probable cause existed. *State v. Holman*, 109 Idaho 382, 387, 707 P.2d 493, 498 (Ct. App. 1985). When a search is conducted pursuant to a warrant, the burden of proof is on the defendant to show that the search was invalid. *State v. Kelly*, 106 Idaho 268, 275, 678 P.2d 60, 67 (Ct. App. 1984).

Based upon all of the information presented to the magistrate in this case, I would hold that there was a substantial basis for concluding that probable cause existed. The officers located drugs, specifically methamphetamine, and drug paraphernalia in the bathroom of the home, and the court issued a warrant to "search for methamphetamine, syringes, packaging materials, scales, baggies, and any and all other documents, evidence of residence of occupancy and/or

19

ownership of the residency."  Thus, the magistrate did not abuse its discretion in finding that probable cause existed.  I respectfully dissent.